UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF WISCONSIN

MARLENEA JACKSON,
8661 Ventana Dr. Unit 3511
Oak Creek, WI 53154;

and

ERICA JACKSON (a minor),
8661 Ventana Dr, Unit 3511
Oak Creek, WI 53154,

    Plaintiffs,

v.

MCKAY-DAVIS FUNERAL HOME, INC.
c/o Sammie T. Davis, registered agent,
928 NE 4th St.
Oklahoma City, OK 73104;

and

SUHOR INDUSTRIES, INC.
c/o Dennis Welzenbach, registered agent,
10965 Granada Lane, Suite 300
Overland Park, KS, 66211-1412;

and

OKLAHOMA WILBERT VAULTS
c/o Ray Lance, registered agent,
345 West Hefner Road,
Oklahoma City, OK 73114;

and

DHL Air Express, S.A.,
c/o CT Corporation System, registered agent,
1200 South Pine Road,
Plantation, FL 33324;

    Defendants.

'07 NOV 21 P 4:20

JOHN ~~SANFILIPPO~~
Case No. CLERK

**COMPLAINT**

07-C-1037

NOW COMES the above named plaintiffs, by their attorneys, **GENDE LAW OFFICE, S.C**, and for their claims against the above named defendants, allege and shows to the Court as follows:

## INTRODUCTION

1. This case is a civil action under the common law of the State of Wisconsin, brought to redress the injuries inflicted on the plaintiffs, Marlenea and Erica Jackson (a minor), by the defendants: Mckay-Davis Funeral Home, Inc.; Suhor Industries Inc.; Oklahoma Wilbert Vaults; and DHL Air Express, S.A., when the defendants mishandled and lost the human remains of the plaintiffs' deceased husband and father, respectively, by negligently failing to properly arrange for the shipment of the remains to the plaintiffs, negligently failing to deliver the remains to the plaintiff, for eventually negligently losing the remains; negligently causing Marlenea and Erica Jackson (a minor) severe emotional distress; and breaching their fiduciary duty to Marlenea and Erica Jackson in violation of Wisconsin law.

## JURISDICTION

2. This action arises under the common laws of the State of Wisconsin. Jurisdiction of this court is conferred by 28 U.S.C. §1332. The plaintiffs are citizens of the State of Wisconsin, while none of the defendants are citizens of the State of Wisconsin; therefore, diversity of citizenship exists. The amount in controversy exceeds $75,000. This Court has jurisdiction over all the defendants by virtue of F.R.C.P. 4(k)(1)(A) and Wis. Stat. § 801.15(4).

## VENUE

3. The Eastern District of Wisconsin is a proper federal venue for this action because the Eastern District is a judicial district in which the plaintiffs reside, the remains of Eric Jackson were negligently lost and where the violations of the plaintiffs' rights under 28 U.S.C. §1391(a) occurred.

## PARTIES

4. The plaintiff, Marlenea Jackson, is an adult citizen of the United States and resident of the State of Wisconsin, who has her permanent residence at 8661 Ventana Dr., Unit 3511, Oak Creek, WI 53154.

5. The plaintiff, Erica Jackson, is a minor citizen of the United States and resident of the State of Wisconsin, who resides at 8661 Ventana Dr., Unit 3511, Oak Creek, WI 53145.

6. At all times relevant to this complaint, the defendant, Mckay-Davis Funeral Home, Inc. ("Mckay-Davis"), a for profit business corporation, with offices of its registered agent, Sammie T. Davis, located at 928 NE 4th St. Oklahoma City, OK 73104, was the owner/operator of the McKay-Davis funeral home located at 1616 N.E. 36th Street, Oklahoma City, OK 73111.

7. At all times relevant to this compliant, the defendant, Suhor Industries Inc. ("Suhor"), a for profit business corporation, with offices of its registered agent, Dennis Welzenbach, located at 10965 Granada Lane, Overland Park, KS 66211-1412, was the owner/operator and/or licensor of Oklahoma Wilbert Vaults, located at 345 Hefner Rd. Oklahoma City, OK 73114.

8. At all times relevant to this complaint, the defendant, Oklahoma Wilbert Vaults Inc., ("Wilbert Vaults"), a for profit business corporation, with offices of its registered agent, Ray Lance, located at 345 W. Hefner Rd. Oklahoma City, OK 73114, was the owner/operator of Wilbert Vaults located at 345 Hefner Rd. Oklahoma City, OK 73114.

9. At all times relevant to this complaint, the defendant, DHL Air Express, S.A. ("DHL"), a for profit business corporation, with offices of its registered agent, CT Corporation System, located at 2000 South Pine Road, Plantation, FL, 33324, was the owner/operator of the shipping company that negligently failed to deliver the remains of the plaintiffs' deceased loved one.

3

## GENERAL ALLEGATIONS

10. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

11. That on July 8, 2006, Eric Gerald Jackson, husband to Marlenea Jackson and father to Erica Jackson (a minor), respectively, died in Oklahoma City, Oklahoma.

12. That at all times relevant hereto, the plaintiffs were entitled to the custody and possession of the decedents' remains.

13. That on July 13, 2006, Marleana Jackson entered into a contract with McKay-Davis to prepare the corpse for viewing, to undertake a visitation and funeral, to cremate the decedent's remains, to ensure the remains of the decedent be delivered to the plaintiffs' home address in Wisconsin and to generally treat the grieving family and burial process with the dignity and respect expected of similarly situated providers in the death care industry.

14. That on July 18, 2006, the defendants arranged for the remains of the decedent to be shipped to the plaintiffs' residence, the remains were picked up by defendant, DHL, from defendant, Wilbert Vaults, owned by Suhor.

15. That at all times relevant to this complaint, it was commonly accepted, known and assumed by the plaintiffs that the transportation and delivery of human remains was always performed in a respectful and dignified manner unless contrarily specified or agreed to.

16. That at all times relevant to this complaint, defendants and each of them were aware that plaintiffs accepted, knew and assumed that the transportation and delivery of human remains was always performed in a respectful and dignified manner unless specifically agreed to otherwise in writing.

17. That the decedent's remains were entrusted to the defendants for cremation and subsequent dignified and respectful transportation and delivery to the plaintiffs in the State of

4

Wisconsin.

18. That when the defendants shipped the decedent's remains, each and every one of them failed to undertake the necessary precautions to ensure that Marlenea Jackson, or other competent individual, received the remains by requiring a signature upon delivery at the plaintiffs' residence to prevent said remains from being left outside, unattended and unaccounted for. The defendants failed to request a signed receipt of delivery or pay the nominal-additional charge to assure that the remains of Eric Jackson were not left in a public area and exposed to theft, vandalism, tomfoolery and/or other nefarious misconduct.

19. That, upon information and belief, defendants: Mckay-Davis; Suhor; and Wilbert Vaults breached the standard of care in the death care industry when they elected to ship the deceased remains through DHL and failed to require a signature confirming receipt of the remains.

20. That, upon information and belief, defendant DHL, violated its own internal operating procedures and/or industry standards when it agreed to and shipped Eric Jackson's cremated human remains.

21. That during the investigation of the loss of Eric Jackson's cremated remains, Terrence Durbin, a DHL representative, told Lt. Edwards of the Oak Creek, Wisconsin, Police Department that if DHL would have known that the package contained human remains DHL would have not accepted it and/or shipped the remains.

22. That on July 24, 2006, Marlenea Jackson called Connie Davis at McKay-Davis, inquiring about the location of her husband's remains. In turn, Ms. Davis contacted Wilbert Vaults to get the tracking number for the purported shipment of Eric Jackson's remains.

23. That on July 24, 2006, Marlenea Jackson contacted DHL to advise them that she had not received her husband's remains in Wisconsin. A DHL representative promised to contact the local office and that someone would call Marlenea Jackson back.

5

24. That on July 24, 2006, upon a second call to DHL, Marlenea Jackson was informed that Eric Jackson's remains had not been located.

25. That on July 25, 2006, Marlenea Jackson called DHL again and was informed that Eric Jackson's remains had been left outside of the front door at the plaintiffs' Oak Creek residence.

26. That on July 25, 2006, a DHL supervisor, called Marlenea Jackson and confirmed that Eric Jackson's remains had been left at the plaintiffs' front door.

27. That on July 26, 2006, Marlenea Jackson called the DHL 1-800 number and was informed that a formal complaint should have been logged on July 24, 2006. Marlenea Jackson was then told that a research specialist would be assigned to the case and the executive staff at the station would be contacted automatically.

28. That on July 26, 2006, Marlenea Jackson's father went to DHL's office to ask if they had seen the package. The office personnel indicated they had not and stated that the DHL driver had been there the day before asking the same question.

29. That on July 28, 2006, DHL Vice President of Customer Relations Office, Bertha James, contacted Marlenea Jackson to apologize for "the misdelivery (sic) of your husbands ashes" and stated that "we will find it", assumedly referring to the package containing Eric Jackson's cremated remains.

30. That on July 28, 2007, DHL representative, Terry Durbin, personally visited the home of the plaintiffs. Mr. Durbin stated to Marlenea Jackson that he would check all of the companies other buildings and make arrangements to talk to people in other buildings about searching for the package, in addition to promising Marlenea Jackson that he would file a police report and contact Marlenea Jackson when these things were done. Terry Durbin never completed these promised tasks and never contacted Marlenea Jackson again, causing unnecessary additional angst, pain and suffering relative to the exceedingly unfortunate course of events.

6

31. That on August 1, 2006, another DHL employee, contacted Marlenea Jackson, and stated that DHL was investigating whether the plaintiffs' neighbors had accidentally picked up "the package", assumedly referring to Eric Jackson's cremated remains.

32. On August 3, 2006, Marlenea Jackson filed a police report with the Oak Creek Police Department.

33. That on August 8, 2006, Bertha James contacted Marlenea Jackson at which time she advised Marlenea Jackson that "all avenues have been exhausted" and that they had "done all that they could do to research the issue." Marlenea Jackson disagreed with DHL's assessment, but Bertha James simply apologized and hung up, causing unnecessary additional angst, pain and suffering relative to the exceedingly unfortunate course of events.

34. That the plaintiffs never received the ashes of their deceased loved one and they will never know where and what became of the remains of Eric Jackson, their husband and father, respectively.

35. The plaintiffs are now informed and believe and thereon allege that Eric Jackson's remains were not transported and delivered with the requisite dignity, care and respect or in accordance with their wishes or the law, but were subjected by the defendants to theft, vandalism, tomfoolery and/or other nefarious conduct as a proximate result of the mishandled, improperly transported and lost remains of Eric Jackson as described above.

36. That the defendants failed to accomplish the cremation and disposition of Eric Jackson remains with the dignity and respect expected of them by public sensibilities and required of them by law. The defendants have deprived plaintiffs of the dignified and respectful disposition to which they were entitled and have irreversibly violated and interfered with the integrity and identity/location of Eric Jackson's remains.

7

37. At all times relevant to this complaint, the defendants, Mckay-Davis, Suhor, and Wilbert Vaults, represented, professed, declared, claimed, and/or held themselves out as being licensed, under applicable laws, to engage in, conduct and/or maintain establishments for the preparation, transportation, disposition, cremation, and/or care of dead human bodies, their ashes, and/or remains in whatever form, and by reason thereof, there existed a special relationship between the plaintiffs and these defendants.

38. That the defendants: McKay-Davis; Suhor; and Wilbert Vaults held themselves out as experienced members of the death care industry that could appropriately handle the sensitive task of cremating the remains of the plaintiffs' loved one and returning those remains to the individual(s) who were entitled to possession thereof. That based on the plaintiffs' reliance upon the representations of said defendants, the plaintiffs gave the defendants the care, custody and control of Eric Jackson's body.

39. That the plaintiffs relied on the express and/or implied representations of the defendants: McKay-Davis; Suhor; and Wilbert Vaults that they were experienced members of the death care industry and could appropriately handle cremating the remains of Eric Jackson and return those remains to the individual(s) who were entitled to them.

40. As a proximate result of the defendants' actions, plaintiffs suffered injuries to their health, strength and activity, great nervous shock, mental anguish, humiliation, and emotional and physical distress of such substantial quantity and enduring quality as no reasonable person in a civilized society should be expected to endure.

41. That plaintiffs are entitled to compensation for the damages, injuries, grief and anguish which defendants' actions have inflicted upon them.

42. That the actions of the defendants have caused severe mental anguish, in addition to severe and emotional and psychological distress, all suffered by the plaintiffs.

8

## BREACH OF FIDUCIARY DUTY

43. That the plaintiffs hereby incorporate the allegations of the preceding paragraphs.

44. That at all times relevant to this complaint, the plaintiffs and the defendants were in inherently unequal bargaining positions.

45. That at all times relevant to this complaint, plaintiffs reposed great and sacred trust and confidence in defendants to treat plaintiffs fairly and with the utmost good faith during the contracted process of providing a dignified process for grieving family and friends of Eric Jackson. As a result thereof, there existed a special fiduciary relationship between plaintiffs and defendants.

46. That at all times relevant to this complaint, defendants knew that ordinary contract damages are not and would not be adequate to compensate plaintiffs if the defendants breached the terms of any agreements relating to the handling of Eric Jackson's remains. Defendants further knew that ordinary contract damages would not require defendants to account for their actions and would not make plaintiffs whole. Defendants knew that as a result of plaintiffs' state of severe bereavement and grief, plaintiffs would of necessity place trust and confidence in defendants to precisely and properly perform all funeral preparations, including the cremation, disposition, and delivery of Eric Jackson's humans remains to the plaintiffs.

47. That defendants were at all times aware that funeral, cremation, and delivery of the remains services they provided were for the plaintiffs' benefit.

48. That defendants were at all times aware that the plaintiffs had a close family relationship with Eric Jackson, and were bereaved as a result of his death and the services of the defendants were sought and paid for the purpose of effectuating plaintiffs' desire to pay last respects to the decedent, allow a dignified grieving process and be comforted in the knowledge that Eric Jackson's remains were returned to them so that they could lay those remains to rest in a respectful and dignified manner.

9

49. That a fiduciary relationship was created between the plaintiffs and the defendants when the defendants assumed control over the remains of Eric Jackson and agreed to return those remains to the plaintiffs for a proper burial and/or final resting place.

50. That the defendants breached their fiduciary duty to the plaintiffs when they failed to return the remains of Eric Jackson to the plaintiffs.

51. That the defendants' breach of their fiduciary duty owed to the plaintiffs has caused the plaintiffs, physical and mental anguish, in addition to extreme emotional and psychological distress, as well as the loss of the remaining physical vestige of their father and husband and have permanently denied the plaintiffs the right to visit or pay respect to the final resting place of Eric Jackson.

## NEGLIGENT HANDLING OF HUMAN REMAINS

52. The plaintiffs hereby incorporate by reference the allegations of the preceding paragraphs.

52. That the nearest relative of one dying, so situated as to be able and willing to perform the duty of ceremonious burial, there vests a right to perform it, and this a legal right, which it is a wrong to violate, which courts protect and vindicate.

54. That the defendants had a duty imposed by law, to properly handle the remains of Eric Jackson and return those remains to the plaintiffs.

55. That the defendants had a duty at all times relevant to this complaint to handle the remains of Eric Jackson in a respectful and dignified manner and to prevent and/or refrain form losing those remains and/or leaving said remains in a public area exposed to theft, vandalism, tomfoolery, and/or other nefarious misconduct.

56. The defendants violated this duty by failing to properly handle the remains of Eric Jackson and leaving said remains in a public area exposed to theft, vandalism, tomfoolery, and/or

other nefarious misconduct.

57. That the defendants were aware that the plaintiffs would be injured and damaged when the plaintiffs became aware the remains of their beloved father and husband, Eric Jackson, had been lost.

58. That the defendants recognized Marlenea Jackson's right to control and possess Eric Jackson's remains by requiring Marlenea Jackson to sign the following: "I hereby acknowledge that I have the legal right to arrange for the final services for the deceased."

59. That the actions of the defendants violated the plaintiffs' right to the possession of their loved one's remains and forever prevented the plaintiffs from securing a respectful, peaceful resting place for Eric Jackson.

60. That the defendants' violation of the law and the plaintiffs' rights has caused the plaintiffs severe mental and physical anguish, in addition to severe emotional and psychological distress.

## NEGLIGENT INFLICATION OF EMOTIONAL DISTRESS

61. The plaintiffs hereby incorporate by reference the allegations of the preceding paragraphs.

62. That the defendants' actions fell below the applicable standard of care in the death care industry.

63. That the plaintiffs suffered severe emotional and psychological injuries as a result of the defendants' actions falling below that standard of care.

64. That the defendants' actions that fell below the standard of care were a cause-in-fact of the plaintiffs' severe emotional and psychological injuries.

65. That the defendants knew or should have known that plaintiffs would and were grief stricken, bereaved, weakened and emotionally vulnerable as a result of Eric Jackson's death

11

66. That the defendants' actions exacerbated the plaintiffs' already severe mental anguish extreme emotional and psychological distress from the unexpected death of their father and husband, by failing to deliver the physical remains of the decedent as assured by the law and the standard of care in the death care industry.

WHEREFORE the plaintiffs demands judgment against the defendants as follows:

a. On behalf of Marlenea Jackson, for compensatory damages in an amount to be determined at a trial of this matter;

b. On behalf of Marlena Jackson, for punitive damages in an amount to be determined at a trial of this matter;

c. On behalf of Erica Jackson (a minor), for compensatory damages in an amount to be determined at a trial of this matter;

d. On behalf of Erica Jackson (a minor), for punitive damages in an amount to be determined at a trial of this matter;

e. For all costs, disbursements, reasonable actual attorney's fees, and all interest due and owing;

f. For any/all other relief this court deems appropriate.

**PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS A TRIAL BY JURY IN THE ABOVE ENTITLED ACTION.**

Dated at Pewaukee, Wisconsin this 21st day of November, 2007.

        GENDE LAW OFFICES, S.C.
        Attorney for Plaintiffs

By: _____
        James J. Gende II
        State Bar No. 1030921

**MAILING ADDRESS:**
N28W23000 Roundy Dr. Ste. 200
Pewaukee, WI 53072
Telephone: 262.970.8500
Facsimile: 262.970.7100