**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

MARLENEA JACKSON and
ERICA JACKSON (a minor),

    Plaintiffs,

v.                                       Case No. 07-C-1037

MCKAY-DAVIS FUNERAL HOME, INC.,
OKLAHOMA WILBERT VAULTS,
DHL EXPRESS (USA), INC.,
TRAVELERS INSURANCE COMPANY,
HARTFORD CASUALTY INS. CO.,

    Defendants.

## DECISION AND ORDER

### NATURE OF CASE

On November 21, 2007, the plaintiffs, Marlenea Jackson and her minor daughter Erica Jackson, filed this action against DHL Air Express, S.A. (DHL), McKay-Davis Funeral Home Inc. (McKay-Davis), Suhor Industries, Inc. (Suhor), and Oklahoma Wilbert Vaults (Wilbert Vaults). The plaintiffs allege causes of action for breach of fiduciary duty, negligent handling of remains, and negligent infliction of emotional distress stemming from the loss of the cremated remains of Eric Jackson, Marlenea's husband and Erica's father. On May 23, 2008, the plaintiffs filed an amended complaint adding Travelers Insurance Company (Travelers) and Hartford Casualty Insurance Co. (Hartford) as defendants. By stipulation, Suhor and Wilbert Vaults and Hartford Casualty Insurance Company have been dismissed from this action.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and because the amount in controversy alleged exceeds $75,000. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment

of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

On March 6, 2009, defendant Travelers filed a motion for declaratory judgment pursuant to Fed. R. Civ. P. 57 and partial summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, defendant Travelers seeks a declaration that it has no duty to defend or indemnify defendant McKay-Davis. Defendant McKay-Davis and the plaintiffs filed briefs in opposition to defendant Travelers motion. Additionally, defendant Travelers filed proposed findings of fact, defendant McKay-Davis filed a response to defendant Traveler's proposed findings of fact and filed its own proposed findings of fact. The plaintiffs also filed a response to defendant Traveler's proposed findings of fact. This motion is fully briefed and will be addressed herein.

At the outset, the court notes that the parties disagree as to what evidence the court can consider in deciding defendant Travelers' motion. Defendant McKay-Davis asserts that the court is permitted to consider only the contents of the amended complaint and the insurance policy at issue in determining whether defendant Travelers has a duty to defend. Thus, defendant McKay-Davis asserts that defendant Travelers' citation to requests for admissions in its proposed findings of fact is not permitted.

In response, defendant Travelers asserts that it is moving for both declaratory and summary judgment and the court may consider different evidence in ruling on the two different motions. Defendant Travelers also asserts that "the Court can review the evidence in the entire record to determine there has been on 'occurrence' which is necessary to trigger coverage under Travelers' policy in the first instance. If there is no coverage, there is no duty to defend." (Defendant Travelers Insurance Company's Memorandum of Law in Support of Motion for Declaratory Judgment / Partial Summary Judgment [Defendant Travelers' Brief] at 12).

The parties do not expressly discuss the appropriate law to apply to the claims alleged in the complaint. Under such circumstances, it is appropriate for the court to apply the law of the forum state. Employers Mutual Casualty Co. v. Skoutaris, 453 F.3d 915, 923 (7th Cir. 2006); Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, 39 F.3d 138, 142 n.2 (7th Cir. 1994); Coleman v. Ramada Hotel Operating Co., 933 F.2d 470, 473 (7th Cir. 1991); Shore v. Dandurand, 875 F.2d 656, 658 (7th Cir. 1989). Thus, the court will apply the law of Wisconsin.

Although "[c]overage is the necessary precondition for both the duty to defend and the duty to indemnify," Lucterhand v. Granite Microsystems, Inc., 2007 U.S. Dist. LEXIS 15072, at *73-*74 (E.D. Wis. March 2, 2007), the duty to defend is broader than the duty to indemnify, because the duty to defend is triggered by arguable, as opposed to actual, coverage. See Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176 Wis.2d 824, 834-35, 501 N.W.2d 1, 5 (Wis. 1993). "[T]he duty to defend is triggered by the allegations contained within the four corners of the complaint." Estate of Sustache v. Am. Family Mut. Ins. Co., 311 Wis.2d 548, 560 751 N.W.2d 845, 850-51 (Wis. 2008).

"An insurer has a duty to defend when there are allegations in a complaint that, if proven, 'would give rise to recovery under the terms and conditions of the insurance policy. . . . The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim.'" Liebovich v. Minn. Ins. Co., 310 Wis. 2d 751; 751 N.W.2d 764, 766 (Wis. 2008) (quoting Elliott v. Donahue, 169 Wis. 2d 310, 485 N.W.2d 403 [1992]).

Defendant Travelers seeks a declaration that it does not have a duty to defend McKay-Davis in the present action.[1] In making that determination, the court looks solely to the

---

[1] Defendant Travelers also seeks a declaration that it does not have a duty to indemnify defendant McKay Davis. However, as to that declaration, "no case or controversy exists that is ripe for adjudication because there has been no finding of liability" against defendant McKay-Davis. See Casual Dining Dev., Inc. v. QFA Royalties, LLC, 2008 U.S. Dist. LEXIS 70586, at *5 (E.D. Wis. Sept. 5, 2008); Nationwide Insurance Co. v. Zavalis, 52 F.3d 689, 693 (7th Cir. 1995) ("The duty to

allegations within the four corners of the amended complaint and considers whether those allegations are covered under the policy of insurance. See Liebovich, 751 N.W.2d at 766. Accordingly, in determining whether defendant Travelers has a duty to defend defendant McKay-Davis, the court will not consider the proposed findings of fact which cite to requests for admissions.[2]

**STANDARDS FOR SUMMARY JUDGMENT AND DECLARATORY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material

---

indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit.").

[2] The Wisconsin Supreme Court addressed this issue in a footnote in Doyle v. Engelke, 219 Wis. 2d, 580 N.W.2d 245, 248 (Wis. 1998) wherein it stated:

> Employers would have this court adopt the language of the decade old court of appeals decision, *Berg v. Fall, 138 Wis. 2d 115, 405 N.W.2d 701 (Ct. App. 1987)*, indicating that courts may be allowed to go beyond the four corners of a complaint when determining whether coverage exists. The language in Berg is, however, contrary to a long line of cases in this state which indicate that courts are to make conclusions on coverage issues based solely on the allegations within the complaint. See *City of Edgerton v. General Cas. Co., 184 Wis. 2d 750, 765, 517 N.W.2d 463 (1994); Elliott v. Donahue, 169 Wis. 2d 310, 320-21, 485 N.W.2d 403 (1992); Atlantic Mut. Ins. Co. v. Badger Med. Supply Co., 191 Wis. 2d 229, 236, 241, 528 N.W.2d 486 (Ct. App. 1995)*(rejecting use of extrinsic aids in coverage determinations). Accordingly, we reject Employer's proffered frame of analysis and confine our analysis to the four corners of the complaint.

facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Therefore, all inferences are taken in the light most favorable to the nonmoving party. Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992).

Jurisdiction over declaratory judgment actions is discretionary. 28 U.S.C. § 2201; Crowley Cutlery Co. v. United States, 849 F.2d 273, 279 (7th Cir. 1988). In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937), the Supreme Court held that the required controversy in declaratory actions must be definite and concrete. The controversy must touch the legal relations of parties having adverse legal interests and the controversy must demand specific relief through a conclusive decree. This general rule must be applied on a case-by-case basis. Basically, the question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

## **RELEVANT UNDISPUTED FACTS AND ALLEGATIONS**[3]

On July 8, 2006, Eric Jackson died in Oklahoma City, Oklahoma. (Amended Complaint ¶ 15). He is survived by his wife, Marlenea Jackson, and his daughter, Erica Jackson, who

---

[3] As a general matter, unless accompanied by citation, the relevant facts are taken from the proposed findings of fact to the extent they are not disputed. Additional facts are taken from the amended complaint. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

reside in Oak Creek, Wisconsin. Id. ¶ 5. On July 13, 2006, plaintiff Marlenea entered into a contract with McKay-Davis to perform funeral services "to prepare the decedent for viewing, to undertake a visitation and funeral, to cremate the decedent's remains, [and] to ensure [that] the remains of the decedent be delivered to the plaintiffs' home address in Wisconsin." Id. ¶ 17.

Arrangements were made by the defendants to ship Eric Jackson's remains back to Oak Creek, Wisconsin. Id. ¶ 18. Pursuant to those arrangements, defendant DHL picked up the remains from Wilbur Vaults, owned by Subhor. Id. ¶ 19. The arrangements with DHL did not require a signature confirming receipt of Eric Jackson's remains. Id. ¶ 24. As a result, DHL delivered the package containing the remains of Eric Jackson to the plaintiffs' residence in Oak Creek leaving it at the front door without requiring any signature. Id. at ¶ 24, 32. Shortly thereafter, the package containing Eric Jackson's remains went missing as a result of "theft, vandalism, tomfoolery and/or other nefarious misconduct." Id. ¶ 24.

Thereafter, the plaintiffs filed the instant action against McKay-Davis, Suhor, Wilbert Vaults, and DHL for breach of fiduciary duty, negligent handling of remains, and negligent infliction of emotional distress. Subsequently, the plaintiff filed an amended complaint adding defendants Travelers and Hartford. The plaintiffs alleged that they were caused to suffer bodily injury because defendant McKay-Davis (along with the other named defendants) negligently failed to arrange for the proper shipment of the decedent's remains to the plaintiffs' residence in Oak Creek, Wisconsin, and negligently failed to deliver the same to the plaintiffs. Specifically, the amended complaint alleges the following:

> 17. That on July 13,2006, Marleana [sic] Jackson entered into a contract with McKay-Davis to prepare the decedent for viewing, to undertake a visitation and funeral, to cremate the decedent's remains, to ensure the remains of the decedent be delivered to the plaintiffs' home address in Wisconsin and to generally treat the grieving family and burial process with the dignity and respect expected of similarly situated providers in the death care industry.

18. That on July 18, 2006, the defendants arranged for the remains of the decedent to be shipped to the plaintiffs' residence.

. . .

22. That the decedent's remains were entrusted to the defendants for cremation and subsequent dignified and respectful transportation and delivery to the plaintiffs in the State of Wisconsin.

23. That Wilbert Vaults, McKay-Davis and/or DHL, negligently failed to properly arrange for the shipment of the decedent's remains to the plaintiffs, and negligently failed to deliver the decedent's remains to the plaintiffs, causing Marlena [sic] and Erica Jackson (a minor) severe emotional distress. This failure occurred in spite of the fact that a funeral service was held in Oklahoma City, the full and final opportunity for memorialization and disposition was denied to the plaintiffs, leading to emotional damages not easily repaired.

24. That when the defendants shipped the decedent's remains, each and every one of them failed to undertake the necessary precautions to ensure that Marlenea Jackson, or other competent individual, received the remains by requiring a signature upon delivery at the plaintiffs' residence to prevent said remains from being left outside, unattended and unaccounted for. The defendants failed to request a signed receipt of delivery or pay the nominal-additional charge to assure that the remains of Eric Jackson were not left in a public area and exposed to theft, vandalism, tomfoolery and/or other nefarious misconduct.

25. That, upon information and belief, defendants: McKay-Davis; Suhor; and Wilbert Vaults breached the standard of care in the death care industry when they elected to ship the decedent's remains through DHL, as opposed to the United States Postal Service, and failed to require a signature confirming receipt of the remains.

26. That during the investigation of the loss of Eric Jackson's cremated remains, a DHL representative, told Lt. Edwards of the Oak Creek, Wisconsin, Police Department that if DHL would have known that the package contained human remains DHL would have not accepted it and/or shipped the remains.

. . .

40. That the plaintiffs never received the ashes of their loved one and they will never know where and what became of the remains of Eric Jackson, a husband and father, while being forever denied any opportunity for a full and final memorialization and disposition of the decedent's remains.

41. The plaintiffs are now informed and believe and thereon allege that Eric Jackson's remains were not transported and delivered with the requisite dignity, care and respect or in accordance with their wishes or the law, but were subjected by the defendants to theft, vandalism, tomfoolery and/or other nefarious conduct as a proximate result of the mishandled, improperly transported and lost remains of Eric Jackson as described above.

- 7 -
Case 2:07-cv-01037-RTR    Filed 06/03/10    Page 7 of 17    Document 152

> 42. That the defendants failed to accomplish the cremation and disposition of Eric Jackson [sic] remains with the dignity and respect expected of them by public sensibilities and required of them by law. The defendants have deprived plaintiffs of the dignified and respectful disposition to which they were entitled and have irreversibly violated and interfered with the integrity and identity/location of Eric Jackson's remains.
>
> . . .
>
> 46. As a proximate result of the defendants' actions, plaintiffs suffered injuries to their health, strength and activity, great nervous shock, mental anguish, humiliation, monetary loss and emotional and physical distress of such substantial quantity and enduring quality as no reasonable person in a civilized society should be expected to endure.
>
> 47. That plaintiffs are entitled to compensation for damages, injuries, grief, and anguish which defendants' actions have inflicted upon them.
>
> 48. That the actions of the defendants have caused severe mental anguish, in addition to severe emotional and psychological distress, all suffered by the plaintiffs.
>
> . . .
>
> 64. That the defendants recognized Marlenea Jackson's right to control and possess Eric Jackson's remains by requiring Marlenea Jackson to sign the following: "I hereby acknowledge that I have the legal right to arrange for the final services for the deceased."

(Amended Complaint).

At the time Eric Jackson's remains disappeared, defendant McKay-Davis was insured by defendant Travelers. The McKay-Davis commercial general liability insurance (CGL) policy, I-680-2661B058-TIL-05, was effective between August 2, 2005, and August 2, 2006. Defendant McKay-Davis sent the plaintiffs' claim to defendant Travelers requesting indemnification and defense pursuant to the policy. Defendant Travelers provided defense counsel to McKay-Davis under a reservation of rights.

Travelers' CGL policy, I-680-2661B058-TIL-05, contains the following Bodily Injury Liability Insuring Agreement:

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But: . . .

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:
   (1) The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Commercial General Liability Coverage Form at 1).[4] The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Commercial General Liability Coverage Form at 12, 14). "Property damage" is defined as "physical injury to tangible property, including all resulting use of that property. All such loss of use shall be deemed to occur at the time of

---

[4] A copy of the Travelers CGL policy issued to defendant McKay-Davis is attached to the September 15, 2008, Affidavit of Kari L. Gunderman filed in support of defendant Travelers motion to bifurcate and stay. (Docket #72).

the physical injury that caused it;" or "loss if use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it." Id. at 15.

Travelers' CGL policy, I-680-2661B058-TIL-05, includes a Funeral Director and Morticians Endorsement which contains the following in all caps and bolded: **THE ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** (Funeral Directors and Morticians Endorsement at 1). The endorsement provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **PROVISIONS**
>
> 1. The following is added to paragraph **1.a** of Coverage A under COVERAGES (Section I):
>
>    "Bodily injury" or property damage" arising out of the rendering or failure to render professional services as funeral director or mortician shall be deemed to be caused by an "occurrence".
>
>    For the purpose of determining the limits for the insurance provided by this endorsement, any act or omission together with all related acts or omissions in the furnishing of these services for any one deceased person will be considered on "occurrence".
>
> 2. With respect to such professional services – exclusions g, h, j, (1) (3) (4)(5) & (6), k, and l of Coverage A do not apply to "property damage" to:
>
>    a. Deceased human bodies, their clothing, or cremated remains; or
>    b. Caskets, urns, vaults or fittings or containers thereof, not in your possession for sales purposes.
>
> 3. Only with respect to such professional services, the definition of "bodily injury" (DEFINITIONS - Section V) is deleted and replaced by the following:
>
>    "Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death from any of these at any time.

Id.

## ANALYSIS

Defendant Travelers asserts that the plaintiffs' claims for bodily injury do not constitute an "occurrence" which would trigger coverage under the Insuring Agreement of defendant McKay-Davis' policy. Specifically, defendant Travelers asserts that the policy defines an "occurrence" as "an accident," which includes continuous or repeated exposure to substantially the same general harmful conditions and none of the allegations in the plaintiffs' amended complaint allege conduct by defendant McKay-Davis that was an accident.

In response, defendant McKay-Davis asserts that the Funeral Directors and Morticians Endorsement provides that Travelers' policy covers it for "bodily injury" defined in part as "mental anguish . . . humiliation" or "property damage" defined in part as "[l]oss of use of tangible property" arising from McKay-Davis "rendering professional services as funeral director or mortician . . . ." (Funeral Directors and Morticians Endorsement at 1). Defendant McKay-Davis further asserts that the amended complaint alleges "bodily injury" and "property loss" resulting from an "occurrence" within the meaning of the Funeral Directors and Morticians Endorsement or, alternatively, within the meaning of the remainder of the policy.

The construction of an insurance policy is amenable to summary judgment because it presents a question of law. Rhein Bldg. Co. v. Gehrt, 21 F.Supp.2d 896, 898 (E.D. Wis. 1998); Heil Co. v. Hartford Acc. and Indem. Co., 937 F.Supp. 1355 (E.D. Wis. 1996). Both the interpretation of words or clauses in an insurance policy and determination of whether coverage exists under that policy are questions of law for the court. Doyle v. Engelke, 219 Wis. 2d 277, 580 N.W.2d 245, 248 (Wis. 1998) (citing Just v. Land Reclamation, Ltd., 155 Wis. 2d 737, 744, 456 N.W.2d 570 [Wis. 1990]; Smith v. Atlantic Mut. Ins. Co., 155 Wis. 2d 808, 810, 456 N.W.2d 597 [Wis. 1990]). Similarly, determining whether an insurance company has a duty to defend

a lawsuit is a question of law. Professional Office Bldgs., Inc. v. Royal Indem. Co., 145 Wis. 573, 580, 427 N.W.2d 427, 429 (Wis. Ct. App. 1998).

An insurer's obligation to defend the insured in a third-party suit is established by determining whether the allegations in the complaint, if proven, would give rise to the possibility of recovery under the terms and conditions of the insurance policy. School Dist. of Shorewood v. Wausau Ins. Companies, 170 Wis. 2d 347, 364, 488 N.W.2d 82, 87 (Wis. 1992). The existence of the duty to defend depends solely on the nature of the claims asserted in the complaint and has nothing to do with the merits of the claim. Radke v. Fireman's Fund Ins. Co., 217 Wis. 2d 39, 43, 577 N.W.2d 366 (Wis. Ct. App. 1998). "The duty to defend is triggered by the allegations contained within the four corners of the complaint." Estate of Sustache v. Am. Family Mut. Ins. Co., 311 Wis.2d 548, 560 751 N.W.2d 845, 850-51 (Wis. 2008). Thus, if the complaint contains allegations that, if proven, would be covered by the insurance policy, the insurer has a duty to defend. Grube v. Daun, 173 Wis. 2d 30, 72, 496 N.W.2d 106 (Wis. Ct. App. 1992).

As previously stated, the duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. General Cas. Co. of Wisconsin v. Hills, 209 Wis.2d 167, 176 n.11, 561 N.W.2d 718, 722 n.11 (Wis. 1997). "If there is any doubt about the duty to defend, it must be resolved in favor of the insured." Elliott v. Donahue, 169 Wis.2d 310, 321, 485 N.W.2d 403, 407 (Wis. 1992). However, "[t]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured." Nichols v. American Employers Ins. Co., 140 Wis.2d 743, 747, 412 N.W.2d 547, 549 (Wis. Ct. App. 1987) (quoting Grieb v. Citizens Cas. Co. of New York, 33 Wis.2d 552, 148, N.W.2d 103, 106 (Wis. 1967). "When facts are alleged that are partially within and partially outside the scope of

coverage, the insurer is obligated to defend the entire suit." See Curtis-Universal, Inc. v. Sheboygan E.M.S., Inc., 43 F.3d 1119, 1122 (7th Cir. 1994).

The interpretation of an insurance policy is governed by the same principles of construction which apply to contracts in general. Seats Inc. v. Nutmeg Ins. Co., 178 Wis. 2d 219, 223, 504 N.W.2d 613, 615 (Wis. Ct. App. 1993). "An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which [the court] interpret[s] as a reasonable person in the position of the insured would understand it." Danbeck v. Am. Family Mut. Ins. Co., 245 Wis. 2d 186, 629 N.W.2d 150, 153 (Wis. 2001). Where the policy terms are unambiguous, a court applies those terms to the facts rather than engage in construction. Seats Inc., 504 N.W.2d at 615. When construing an endorsement to an insurance policy,

> the endorsement and policy must be read together, and the policy remains in full force and effect except as altered by the words of the endorsement. . . . Endorsements or riders on a policy become a part of the policy, and must be construed with it. . . . [W]here the provisions are inconsistent, those of the rider or endorsement must prevail.

Inter-Insurance Exchange v. Westchester Fire Ins. Co., 25 Wis. 2d 100, 130 N.W.2d 185, 188 (Wis. 1964) (quoting Appleman, 13 Insurance Law and Practice [1943], pp. 290, 294, 297, secs. 7537-7539).

Defendant McKay-Davis asserts that defendant Travelers has the burden to establish that it has no duty to defend it. Defendant McKay-Davis asserts that defendant Travelers failed to meet its burden. In contrast, defendant Travelers asserts that defendant McKay-Davis has the burden to prove that coverage exists under the contract.

In a dispute about coverage, the insured has the burden of proving that coverage applies. Fernandez v. Strand, 63 F.Supp.2d 949, 953 (E.D. Wis. 1999) (citing Just v. Land Reclamation, Ltd., 151 Wis.2d 593, 605, 445 N.W.2d 683 [Wis. Ct. App. 1989], rev'd on other grounds, 155

Wis.2d 737, 45 N.W.2d 570 [1999]). If, however, the insurer relies on an exclusion to deny coverage, the insurer has the burden of demonstrating that the exclusion is applicable. Fernandez, 63 F.Supp.2d at 953.

In filing its motion for summary judgment, defendant Travelers failed to address the Funeral Directors and Morticians Endorsement of defendant McKay-Davis' CGL policy. Defendant Travelers asserts that it

> purposely has not addressed the issue of whether McKay Davis' acts were professional services because it is not necessary. The Endorsement still provides coverage, if triggered, only if these services were an "occurrence" causing bodily injury. The Endorsement does not modify the definition of "occurrence" as set out in the policy; therefore, the Endorsement cannot create coverage for McKay Davis here.

(Defendant Travelers Insurance Company's Reply Memorandum of Law in Support of Motion for Declaratory Judgement / Partial Summary Judgment [Defendant Travelers' Reply] at 2) (emphasis in original). Defendant Travelers maintains that because the term "occurrence" still requires an "accident" in order to trigger coverage and, in this case, no accident is alleged to occur, it does not have a duty to defend Defendant McKay-Davis.

The Funeral Directors and Morticians Endorsement states in capital and bold letters that "the endorsement changes the policy. Please read it carefully." (Funeral Directors and Morticians Endorsement at 1). The Endorsement adds the following to paragraph **1.a.** of Coverage A under Coverages (Section 1):

> "Bodily injury" or "property damage" arising out of the rendering or failure to render professional services as funeral director or mortician shall be deemed to be caused by an "occurrence."

Id. Thus, with the addition of the Endorsement, paragraph 1.a. of Coverage A under Coverages (Section1) reads:

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. "Bodily injury" or "property damage" arising out of the rendering or failure to render professional services as funeral director or mortician shall be deemed to be caused by an "occurrence."

Additionally, with respect to such professional services, "bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death from any of these at any time." See Funeral Directors and Morticians Endorsement at 1. The endorsement does not alter the policy's definition of the term "occurrence" which continues to be defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." (Commercial General Liability Coverage Form at 14). However, contrary to defendant Travelers' assertions, an "accident" is not necessary to trigger coverage. Rather, in addition to the policy's definition of "occurrence" as an accident, an occurrence is deemed to have occurred if "bodily injury" or "property damage" arose out of "the rendering or failure to render professional services as funeral director or mortician."

The amended complaint alleges that the defendants (including defendant McKay-Davis) "negligently failed to properly arrange for the shipment of the decedent's remains to the plaintiffs . . . causing Marlena [sic] and Erica Jackson severe emotional distress." (Amended Complaint ¶ 23). It further alleges that as a result of the defendants' actions, the plaintiffs "suffered injuries to their health, strength and activity, great nervous shock, mental anguish, humility . . . and emotional and physical distress." Id. ¶ 46. The amended complaint also alleges that defendant

McKay-Davis provided professional services as "funeral director or mortician" by alleging that McKay-Davis contracted with Marlenea Jackson to "prepare the decedent for viewing, to undertake a visitation and funeral, [and] to cremate the decedent's remains . . . ." Id. ¶ 17.

Because the amended complaint alleges that the "bodily injury" arose out of defendant McKay-Davis' rendering or failure to render professional services as "funeral director or mortician," the alternative definition of "bodily injury" applies. Thus, "bodily injury" is defined as "bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person . . ." Id. The plaintiffs alleged that they suffered severe "mental anguish" and "humiliation" as well as other bodily injuries. Accordingly, the plaintiffs sufficiently alleged "bodily injury" as defined by the insurance policy.[5] Moreover, as the "bodily injury" was alleged to arise out of defendant McKay-Davis' "rendering or failure to render professional services as a funeral director, or mortician," it arose from an "occurrence." Thus, defendant Travelers is under a duty to defend against the amended complaint. As such, Travelers' motion for partial summary judgment and declaratory judgment will be denied. Accordingly, the case, previously stayed for litigation of the coverage issues, will be reopened.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Travelers' motion for partial summary judgment be and hereby is **denied**. (Docket #116).

---

[5] Because the court has determined that the amended complaint alleged "bodily injury" as defined by the endorsement, it is unnecessary for the court to address whether it alleges "property damage" as defined by the policy. See School Dist. of Shorewood v. Wausau Ins. Cos., 170 Wis. 2d 347, 488 N.W.2d 82, 88 (Wis. 1992) ("Even though the amended complaint in the underlying litigation may contain other theories of liability not covered by the insurance policies, the insurers are obligated to defend the entire action if just one theory of liability appears to fall within the coverage of the policies.")

**IT IS FURTHER ORDERED** that Travelers motion for declaratory judgment be and hereby is **denied**. (Docket #116).

**IT IS ALSO ORDERED** that the stay of discovery be and hereby is lifted and the case reopened.

**FINALLY, IT IS ORDERED** that the parties shall appear for a telephone status conference on June 15, 2010 at 2:30 p.m. The court will initiate the conference call.

Dated at Milwaukee, Wisconsin this 3rd day of June, 2010.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge