# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MARLENEA JACKSON, and
ERICA JACKSON

        Plaintiffs,

    and                                     Case No. 07-CV-1037

ANTHEM BLUE CROSS BLUE SHIELD UNITED;
UNITED HEALTHCARE INSURANCE COMPANY,

        Involuntary Plaintiffs,
    v.

MCKAY-DAVIS FUNERAL HOME, INC.,
SUHOR INDUSTRIES, INC.,
OKLAHOMA WILBERTS VAULTS,
DHL Air Express, S.A.,
TRAVELERS INSURANCE COMPANY, and
HARTFORD CASUALTY INSURANCE COMPANY.

        Defendants

---

# DECISION AND ORDER

---

On November 21, 2007, the plaintiffs, Marlenea and Erica Jackson, filed suit against McKay-Davis Funeral Home, Inc. (McKay-Davis), Suhor Industries (Suhor), Oklahoma Wilbert Vaults (Wilbert Vaults), and DHL Air Express, S.A. (DHL). The plaintiffs alleged causes of action for breach of fiduciary duty, negligent handling of human remains, and negligent infliction of emotional distress stemming from the loss of the cremated remains of Eric Jackson, Marlenea's husband and Erica's father. On May 29, 2008, the plaintiffs filed an amended complaint adding Travelers Insurance Company

(Travelers) and Hartford Casualty Insurance Co. (Hartford) as defendants and adding a breach of contract claim against defendant DHL.

The case was assigned to this court according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(b) (E.D. Wis.). The parties consented to the exercise of full jurisdiction by a United States magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, based on diversity of citizenship. Venue is proper under 28 U.S.C. § 1391.

In cases brought under diversity jurisdiction, courts apply the law of the forum state unless the parties raise a conflicts of law issue. Employers Ins. of Wausau v. Stopher, 155 F.3d 892, 895 (7th Cir.1998); Wolverine Mut. Ins. V. Vance, 325 F.3d 939, 942 (7th Cir. 2003). Here, the defendant states that the relevant laws are substantially similar in Wisconsin and Oklahoma or that no relevant laws exist in either state. The plaintiff expresses no position on the issue. Because the parties do not raise a conflicts issue, the court will apply the laws of Wisconsin. Therefore, the court will apply Wisconsin law as it believes the Wisconsin Supreme Court would apply it. Wolverine, 325 F.3d at 942.

On December 23, 2008, the court granted DHL's motion for partial summary judgment on the plaintiffs' claims of breach of fiduciary duty, negligent handling of human remains, and negligent infliction of emotional distress. On November 23, 2010, the court granted DHL's motion for partial summary judgment on the plaintiffs' breach of contract claim, which was the only cause of action still pending against DHL. By stipulation, Suhor and Wilbert Vaults have been dismissed from this action. Thus, only McKay-Davis and Travelers remain as defendants in this action.

On January 28, 2011, defendant McKay-Davis filed a motion for summary judgment, asserting that plaintiff Erica Jackson should be dismissed because she lacks standing and has sustained no damages. Defendant McKay-Davis contends that plaintiff Marlenea Jackson, as the surviving spouse of Eric Jackson, is the sole and exclusive party who may maintain this action. In addition, defendant McKay-Davis contends that as to both plaintiffs, the tort claims and request for punitive damages should be dismissed as a matter of law. The motion has been fully briefed and will be addressed herein.

## STANDARD FOR SUMMARY JUDGMENT

At the outset, the court notes that the defendant's motion for summary judgment as to the plaintiffs' breach of fiduciary duty claim challenges the sufficiency of the amended complaint under Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). These cases address motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, because the defendant is moving for summary judgment, not dismissal of the complaint, the court will decide the merits of the plaintiff's breach of fiduciary duty claim as a matter of law, rather than examine the sufficiency of the complaint.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Mach., 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the

suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A genuine issue of material fact is not shown by "the mere existence of some alleged factual dispute between the parties," Anderson, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Anderson, 477 U.S. at 252.

The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" Smith ex rel. Smith v. Severn, 129 F.3d 419, 426 (7th Cir. 1997) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 [1962] [per curiam]); see also Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996) (quoting Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 [7th Cir. 1993]). The choice between reasonable inferences from facts is a jury function. Id.; see also Anderson, 477 U.S. at 255.

Rule 56 of the Federal Rules of Civil Procedure provides that affidavits in support of summary judgment must "set out facts that would be admissible in evidence . . . ." The Federal Rules of Evidence prohibit the admission of hearsay. See Fed. R. Evid. 802. Hearsay evidence, therefore, does not meet this evidentiary requirement. See Schindler

v. Seiler, 474 F.3d 1008, 1012 (7th Cir. 2007).  Thus, any proposed findings of fact which do not set forth facts that would be admissible in evidence have not been included in the relevant facts.

### **RELEVANT UNDISPUTED FACTS**[1]

Eric Jackson died in Oklahoma City, Oklahoma on July 8, 2006.  He was survived by his wife, Marlenea Jackson, and his minor daughter, Erica.

After Eric Jackson's death, plaintiff Marlenea Jackson contracted McKay-Davis, a mortuary funeral home, to handle Eric Jackson's funeral services.  However, she later decided to cremate, rather than bury, her husband's body, because her daughter, Erica Jackson, "wanted to bring her daddy home."  (PPFOF ¶ 1.)  McKay-Davis only performed services related Eric Jackson's funeral, such as picking-up Eric Jackson's body, embalming it, and preparing it for dressing and viewing during funeral services.  Because McKay-Davis does not do cremations, it outsourced the cremation services of Eric Jackson, including the shipment of the cremains, to Suhor, a third-party crematory that cremates as a service to funeral homes.

Marlenea Jackson executed an Authorization for Cremation at McKay-Davis, which was witnessed by McKay-Davis employee Paulette Williams.  The authorization states:  "I request that following cremation, the FUNERAL HOME make disposition of the cremated remains as follows:" (PPFOF ¶ 38.)  Mrs. Jackson wrote in the provided space: "ship to my home after cremation."   (Id.) The Authorization does not indicate that Suhor, as opposed to McKay-Davis as stated in the document, would ship the cremated remains. McKay-Davis charged Marlenea Jackson $60 to have the cremains shipped.

---

[1]  As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact that are not disputed.  Citations to sources of quoted excerpts have been included, even when those excerpts are undisputed.

Thereafter, Ms. Davis directed Suhor to ship Eric Jackson's cremated remains to Mrs. Jackson in Wisconsin. Belinda Spoonmore was Ms. Davis' primary contact at Suhor concerning the shipment of Eric Jackson's remains.

Ms. Davis testified that she told Marlenea Jackson that Suhor, not McKay-Davis, would be handling the cremation and shipment of her husbands' remains. Prior to the loss of her husband's remains, Marlenea Jackson had no contact with Suhor. Mrs. Jackson communicated directly and only with Connie Davis and she did not instruct Ms. Davis regarding how to send the remains.

On July 18, 2006, Ms. Davis contacted Mrs. Jackson regarding an authorization to split the cremated remains of Eric Jackson, which was needed to allow Eric Jackson's mother to receive half the cremains. In addition, Ms. Davis signed a Release of Cremated Remains form, which stated:

> I am duly authorized to receive the receipt for the cremated remains, and/or I do hereby authorize Oklahoma Wilbert Vaults to deliver or ship the cremated remains of
>
> Eric Jackson
>
> I assume liability for any damages that may arise from any cause out of said delivery or shipment thereof, and release Oklahoma Wilbert from any liability that may attach hereto by reason of said delivery or shipment.

Ms. Davis did not read the release before she signed it.

On July 18, 2006 Eric Jackson's remains were cremated. McKay-Davis received half of the cremains. Suhor contacted DHL to arrange for pick-up of the other half. The cremated remains were shipped to the plaintiffs' home on July 19, 2006, while Mrs. Jackson was in Kansas City. Mrs. Jackson testified that she was not notified that the

6

cremains had been shipped and that she had intended on being home when her husband's cremains were delivered.

As of Monday, July 24, 2006 Mrs. Jackson had not heard anything concerning her husband's ashes. She contacted Ms. Davis to find out when she should anticipate delivery, and Ms. Davis informed her that she would call Suhor and find out what was going on.[2]

## ANALYSIS

### Plaintiff Erica Jackson's Standing and Tort Claims

In moving for summary judgment, the defendant asserts that plaintiff Erica Jackson should be dismissed from the suit for lack of standing because only the surviving spouse, Marlenea Jackson, has standing to pursue the claims in this case. The defendant also contends that Erica Jackson should be dismissed because she cannot establish damages. In support, the defendant states that discovery shows that Erica has not suffered any emotional harm related to the lost ashes of her father.

In opposing the motion, the plaintiffs assert that Erica Jackson has standing to pursue the claims in this action and that she has suffered emotional damage as a result of the loss of her father's remains. In addition, the plaintiffs maintain that Erica was a third-party beneficiary of the contract between her mother and the defendant.

The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." Northeastern Fla. Contractors v. Jacksonville, 508 U.S. 656, 663 (1993) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555 [1992]). To

---

[2] As indicated by the amended complaint, the plaintiffs' entire claim rests on the allegation that the plaintiffs never received Mr. Jackson's cremains as a result of the package being left on their doorstep while they were not home. Notably, both parties neglected to set forth facts related to the actual loss of the remains in their proposed findings of fact.

establish Article III standing a party must demonstrate three things: (1) "injury in fact," which means an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. <u>Northeastern Fla. Contractors</u>, 508 U.S. at 663-64. (citations omitted). These three elements are the "irreducible minimum" required by the Constitution. <u>Id.</u> at 664.

Even if a party passes this constitutional threshold, courts may impose prudential limits on standing, including "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." <u>Family & Children's Ctr., Inc. v. Sch. City of Mishawaka</u>, 13 F.3d 1052, 1059 (7th Cir. 1994) (citing <u>Allen v. Wright</u>, 468 U.S. 737, 751 [1984]). Such prudential limits on standing "eliminate cases 'where no individual rights would be vindicated' and restrict access to federal courts to those litigants best suited to assert a particular claim.'" <u>Id.</u> (citations omitted).

Wisconsin courts have not addressed the issue of standing as it relates to tort claims based on the mutilation, mishandling, or disturbance of the remains of a deceased family member.[3] The decisions of courts in other jurisdictions considering the issue are split.

---

[3] The Wisconsin Court of Appeals had the opportunity to address the standing of persons without the legal right of disposition in <u>Holsen v. Heritage Mut. Ins. Co.</u>, 165 Wis. 2d 641, 478 N.W.2d 59 (Ct. App. 1991), but declined to do so because the issue was not briefed by the parties. As such, the court held that the plaintiffs' complaint stated a claim for interference with the common-law right of proper burial.

The defendant urges the court to follow the line of cases holding that the only party with standing to bring a cause of action arising from disturbance, mishandling or mutilation of a body is the person or persons holding the right to control disposition of the body under state law. See, e.g., Crawford v. J. Avery Bryan Funeral Home, Inc., 253 S.W.3d 149, 159-60 (Ct. App. Tenn. 2008); Floyd v. Lykes Bros. Steamship Co., 655 F. Supp. 380, 384 (E.D. Penn 1987); Whaley v. County of Saginaw, 941 F. Supp. 1483 (E.D. Mich. 1996); Amaker v. King County, 479 F. Supp. 2d 1159 (W.D. Wash. 2007); Steagall v. Doctor's Hosp., 171 F.2d 352 (D.C. Cir. 1948). These cases rest on the legal assumption that the custodian of the deceased's body has "a legal right of possession over it for the purposes of preservation and burial, and that any interference with that right by mutilation or otherwise disturbing the body is an actionable wrong." Larson v. Chase, 50 N.W. 238, 239 (Minn. 1891). In other words, although a deceased's body is not "property" in the commercial sense, there lies a quasi-property right in a deceased's body that only the holder of that right may vindicate. See Restatement (Second) Torts § 868, cmt. A (1977).

The plaintiff, on the other hand, urges the court to follow the line of cases that grant standing to all individuals to whom the defendant owes a recognized legal duty. See, e.g., Christensen v. Sup. Ct. of Los Angeles County, 820 P.2d 181 (Cal. 1991); Carney v. Knollwood Cemetary Ass'n, 514 N.E.2d 430, 434 (Ohio App. 1986); Boorman v. Nevada Mem'l Cremation Soc'y, 236 P.3d 4, 8 (Nev. 2010) Contreraz v. Michelotti-Sawyers, 896 P.2d 1118, 1112 (Mont. 1995); Golston v. Lincoln Cemetary, Inc., 573 S.W.2d 700, 710 (Mo. Ct. App. 1978). These cases reject the quasi-property approach, recognizing that where the injury is emotional harm, granting standing to only the party

with the superior legal right of disposition yields arbitrary results.  <u>See, e.g.</u>, <u>Christensen</u>, 820 P.2d at .

To resolve the standing issue, the court will begin by examining Wisconsin cases discussing the tort of negligent handling of human remains.  The Wisconsin Supreme Court first recognized the legal right to entomb the remains of a relative in their integrity and without mutilation" in <u>Koerber v. Patek</u>, 123 Wis. 453, 102 N.W. 40, 45 (Wis. 1905).  In <u>Koerber</u>, the deceased's son sought damages for emotional distress after the defendant refused to return the deceased's stomach, which he cut out, removed, and carried away without authorization, so that the deceased could not be properly buried.  The court determined that the son raised a cognizable claim, holding that the custodian of a deceased's body has a legal right to its possession for the purposes of preservation and burial, and that interference with that right is an actionable wrong that courts should protect and vindicate.  <u>Id.</u> at 42-43.

After determining that the son had stated a cognizable claim, the court discussed whether the son held the right of custody and burial, and, therefore, the resulting right of action for violations thereof.  The court began by stating that "common consent and custom recognize the right and duty to rest upon those who bore to the deceased in life the closest personal intimacy of acknowledged lawful relationship," finding that "foremost and closest in such relationship stands the surviving spouse."  The court was not aware of any surviving spouse or other child having a greater or equal right to bury his mother's remains, but stated that if others existed, "that fact [could] be set up by defendant, and the necessity or propriety of their joinder then considered."  Thus, the court left open the

question of whether only the legal custodian of the body would have standing to sue or whether multiple family members could join in one lawsuit.

Seventy-five years later, the Wisconsin Supreme Court revisited <u>Koerber's</u> holding in <u>Scarpaci v. Milwaukee County</u>, 165 Wis. 2d 641, 292 N.W.2d 816 (Wis. 1980). The court stated:

> The law is clear in this state that the family of the deceased has a legally recognized right to entomb the remains of the deceased family member in their integrity and without mutilation. Thus the next of kin have a claim against one who wrongfully mutilates or otherwise disturbs the corpse. This issue was settled in Wisconsin in 1905 in the case of <u>Koerber v. Patek</u>, 123 Wis. 453, 102 N.W. 40 (1905), in which this court recognized the interest of the living in the bodies of the dead, saying:
>
>> We can imagine no clearer or dearer right in the gamut of civil liberty and security than to bury our dead in peace and unobstructed; none more sacred to the individual, nor more important of preservation and protection from the point of view of public welfare and decency; certainly none where the law need less hesitate to impose upon a willful violator responsibility for the uttermost consequences of his act.
>
> **The basis for recovery of damages is found not in a property right in a dead body but in the personal right of the family of the deceased to bury the body**. The mutilating or disturbing of the corpse is held to be an interference with this right and an actionable wrong.
>
> The law is not primarily concerned with the extent of physical injury to the bodily remains **but with whether there were any improper actions and whether such actions caused emotional or physical suffering to the living kin**. The tort rarely involves pecuniary injury; the generally recognized basis of damages is mental suffering.

<u>Id.</u> at 820-21. (emphasis added).

Although the court in <u>Scarpaci</u> did not address the issue of standing, its reasoning is nonetheless instructive.[4]   The emphasized language indicates that Wisconsin has rejected the quasi-property rights approach and that standing should not be limited to the

---

[4] The issue of standing did not arise because the suit was brought by the parents of their deceased minor child, who this court assumes had sole right to disposition of the body.

person(s) holding the legal right of disposition.  Rather, standing should be granted to living kin who have suffered emotionally or physically from the defendant's negligent conduct.  Based on this language, the court concludes that the Wisconsin would reject the quasi-property approach in favor of the duty approach as described in <u>Christensen</u> and <u>Boorman</u>.  Adopting the duty approach also addresses concerns over Erica Jackson's status as a minor child.[5]

In <u>Christensen</u>, the plaintiff class sued mortuaries, crematoria, and a biology supply company. alleging that it desecrated human remains, removed valuables from the deceased, comingled remains, and sold body parts without consent.  The California Supreme Court held that the class of persons who could recover for negligent infliction of emotional distress was not limited to those who had a statutory right to control disposition of the remains and those who contracted for disposition.  In so holding, the court recognized that the fact that a particular person holds the legal right to dispose of the body is not "a reliable indicator of who may suffer the greatest emotional distress as a result of mishandling the deceased's body.  <u>Christensen</u>, 820 P.2d at 887.

Similarly, in <u>Boorman</u>, the court allowed surviving family members who did not hold the legal right of disposition to sue a mortuary for emotional distress after they discovered that the deceased's organs had been removed and replaced with a rolled up cloth.  Like <u>Christensen</u>, the court recognized that limiting recovery for emotional distress to the person holding the statutory right to dispose of the body is "an arbitrary delineation." <u>Boorman</u>, 236 P.2d at 8.  In both cases, the courts emphasized that oftentimes someone

---

[5] The court has not identified a negligent handling of human remains case dealing with the rights of a minor child.

other than the person with the legal right of disposition may suffer equal or greater emotional harm than the person actually holding that right. Therefore, "there seems to be no basis for a rule that allows one individual a right of action and denies it to another who has essentially identical interests and has suffered equally from the wrong." Carney, 514 N.E.2d at 434 n.5 (quoting Note, Damages: Pleading: Property: Who May Recover for Wrongful Disturbance of a Dead Body, 19 Cornell L. Rev. 108, 110-111 [1933]).

The court recognizes that granting standing to a person other than the person with the legal right of disposition may unreasonably increase the number of persons seeking recovery. However, Christensen, Boorman, and other courts granting standing to persons other than those holding the legal right of disposition have adequately addressed such danger by limiting standing to a narrow class of individuals. For example, in Christensen, the court held that "[t]he plaintiff must be a person to whom the defendant owed a duty recognized by the law. In this context, the duty is owed only to those close family members who were aware that funeral and/or crematory services were being performed, and on whose behalf or for whose benefit those services were rendered." 820 P.2d at 875. Similarly, the court in Boorman held that "close family members who are aware of both the death of a loved one and that mortuary services were being performed may bring an action for emotional distress resulting from the negligent handling of the deceased's remains."[6] 236 P.2d at 8; see also Golston, 573 S.W.2d at 710 (holding that sister was part of the immediate family based on fact that she stepped forward to handle

---

[6] This holding was limited to actions against mortuaries. Boorman, 236 P.2d at 7-8. The court also held that only the person who held the legal right of disposition over the body could assert a claim against the coroner. Id. at 9. The court distinguished between the two defendants based on the duties they owed, finding that mortuaries voluntarily undertake a duty to competently prepare the decedent's body for the benefit of the bereaved, whereas coroners are obligated by law to perform its services. Id. at 7, 9. Therefore, a coroner's duty is limited to not negligently preventing proper interment or cremation. Id. at 9.

funeral arrangements on behalf of the deceased's minor children and therefore could join in action for negligent burial); Contreraz, 896 P.2d at 1122. (holding that children and grandchildren who were raised by the deceased were close family members for purposes of standing.)

The number of persons able to recover in these cases would be further limited by public policy considerations. Even if a plaintiff can establish that the defendant owed a duty because he or she falls into that narrow class of plaintiffs, the plaintiff must also be able to prove the other elements of negligent infliction of emotional distress as required by Wisconsin common law, which includes a legal cause determination. Thus, a court may preclude a plaintiff's recovery based on public policy, if deemed necessary by the facts of the particular case.

The court should also note that cases following the quasi-property theory are distinguishable from the present case. Generally, the facts giving rise to such cases involve some type of unauthorized act, such as unauthorized autopsy, harvesting of organs or body tissue, or disposal of the body, which would normally require the person with the legal right of disposition to make a decision on how to dispose of the body. Floyd, 655 F. Supp. at 380 (unauthorized burial at sea); Amaker, 479 F. Supp.2d at 1159 (unauthorized harvesting of organs); Whaley, 941 F.Supp. at 1483 (unauthorized removal of corneas); Larson, 50 N.W. at 238 (unauthorized autopsy); Steagall, 171 F.2d at 352 (unauthorized autopsy); Crawford, 253 S.W.3d at 149 (decedent's remains were not cremated as contracted for). In these cases, it makes sense to limit standing to the person holding the legal right of disposition.

14

As the defendant asserts, holding otherwise might require potential defendants to obtain consent from all next of kin before completing an autopsy, performing a cremation, donating the body or its organs, and so on, creating irresolvable disputes between family members over the manner of disposition of the decedent's body. In support, the defendants cite Whaley, 941 F. Supp. at 1491; see also, Aetna Life Ins. Co. v. Lindsay, 69 F.2d 627 (7th Cir. 1934)(Court dismissed daughter's claim against undertaker for completing an unauthorized autopsy, holding that the decedent's surviving spouse, who approved the autopsy, had the sole right of disposition.). However, this problem is not present in cases like this one, where the alleged negligence does not involve conduct requiring authorization or a decision from the party holding the legal right of disposition. Here, there is no actual or potential dispute between the plaintiffs.

Now that the court has determined that standing is not limited to the person holding the legal right of disposition, the court must determine whether Erica should be granted standing under Wisconsin law. Scarpaci indicates that standing should be limited to "living kin" who suffered emotional or physical injury as a result of the defendant's actions. 292 N.W.2d at 821. Erica, as Eric Jackson's minor daughter, certainly qualifies as "living kin." However, whether she suffered emotional or physical injury as a result of the defendant's actions is a question of fact reserved for the finder of fact. Therefore, the court will deny the defendant's motion for summary judgment seeking dismissal of plaintiff Erica Jackson for want of standing.

In the event the court concluded that Erica Jackson had standing, the defendant asserts that she has not established a tort claim because she cannot prove damages, specifically emotional harm. The defendant asserts that Erica's medical records show

that she was treated for issues other than emotional distress caused by the lost ashes, and that this was confirmed by her therapist. The defendant also asserts that no expert testimony was provided regarding Erica's claims.[7] The plaintiffs disagree, citing to medical opinions provided by the plaintiffs' expert witness, Dr. William Lamers. In reply, the defendant asserts that the court should not consider Dr. Lamers' testimony because it is inadmissible under <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 589 (1993).

The defendant's challenge to the admissibility of the plaintiffs' expert witness testimony under <u>Daubert</u> was raised for the first time in the defendant's reply brief. Therefore, the court will not consider it. Furthermore, whether Erica Jackson sustained emotional injuries is a question of fact. Based on the parties' submissions, at this time, the court cannot conclude that no genuine issue of material fact exists. Therefore, the court will deny the defendant's motion for summary judgment seeking dismissal of Erica Jackson's tort claims on the grounds that she has failed to prove damages.

For the foregoing reasons, the court will deny the defendant's motion for summary judgment seeking dismissal of Erica Jackson as plaintiff.

### **Tort Claims**

The defendant asserts that the plaintiffs' claim for breach of fiduciary duty fails as a matter of law. Specifically, the defendant asserts that it did not enter into a fiduciary relationship with the plaintiffs. The defendant maintains that an agreement for funeral services does not create a fiduciary relationship in Wisconsin, Oklahoma, or any state

---

[7] The defendant filed its motion for summary judgment on January 28, 2011. Dr. Lamers, the plaintiffs' expert, was deposed on January 13, 2011. The defendants received Dr. Lamers' report on that date, twenty-seven months after the plaintiffs made their expert disclosures. The plaintiffs maintain "McKay-Davis' suggestion at summary judge [sic] there was no report belies the fact that fifteen days earlier they had received a report and cross examined that plaintiff's [sic] expert at that time." (Plaintiff's Brief in Opposition to Defendant McKay Davis's Motion for Summary Judgment at 17 n.2.)

that has addressed the question.  The plaintiff also contends that Mrs. Jackson did not relinquish control over confidential decision making and that any obligation the defendant may have had did not extend to handling the cremation and shipping obligations of Suhor and DHL.

The plaintiffs disagree, maintaining that a fiduciary duty was created when Mrs. Jackson entrusted the remains of her husband to the defendant.  According to the plaintiffs, this relationship was formed "when McKay-Davis assumed control over the remains of Eric Jackson and agreed to return those remains to the plaintiffs for a proper burial and/or final resting place."  (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment [Plaintiffs' Brief in Opposition] at 18).  The plaintiffs also contend that the parties had unequal bargaining power, that the plaintiffs reposed great and sacred trust and confidence in the defendant, that the defendant knew the plaintiffs placed such trust and confidence in it, and that the defendant understood that the services provided were for the plaintiffs' benefit.[8]

No Wisconsin case addresses the question of whether a funeral home or crematory owes a fiduciary duty to its bereaved customers.  Recognizing this, the parties cite a number of cases in foreign jurisdictions in support of their respective positions.  However, before considering what other courts have done, this court must look to Wisconsin law addressing fiduciary duties generally to determine whether such a duty does exist.  <u>Wolverine</u>, 325 F.3d at 942.

---

[8]  In addition, the plaintiffs contend that OKLA. STAT. tit. 59, § 396.2(6) creates a duty to provide funeral services until final disposition or release of the body to a common carrier or the next of kin.  The court disagrees.  OKLA. STAT. tit. 59, § 396.2 does not impose a legal duty on the defendant.  As noted previously, the court is applying Wisconsin law to this case.  Moreover, even if the court were considering Oklahoma law, subsection (6), quoted, but not cited to, by the plaintiffs, merely provides a definition of "directing a funeral" or "funeral directing." It does not impose a legal duty on the part of funeral homes as the plaintiffs contend.

To state a claim for breach of fiduciary duty under Wisconsin law, the plaintiffs must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff damage. <u>Berner Cheese Corp. v. Krug</u>, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 270, 752 N.W.2d 800. Whether one breached a fiduciary duty is a question of law reserved for the courts. <u>Zastrow v. Journal Communications, Inc.</u>, 2006 WI 72, ¶ 12, 291 Wis. 2d 426, 437, 718 N.W.2d 51.

A fiduciary is one who accepts a "position of authority with regard to the affairs of another." <u>Id.</u> ¶ 25. The term "fiduciary duty" describes "those obligations that are peculiar to a fiduciary and are based on the conscious undertaking of a special position with regard to another." <u>Id.</u> ¶ 28.

Generally, fiduciary relationships arise in two situations: (1) where the relationship is created by contract or a formal legal relationship such as principal and agent, attorney and client, trust and trustee, guardian and ward, or (2) where implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the transactions in question. <u>Prod. Credit Ass'n of Lancaster v. Croft</u>, 143 Wis. 2d 746, 423 N.W.2d 544, 546 (Ct. App. 1988) (citing <u>Denison State Bank v. Madeira</u>, 640 P.2d 1235, 1241 [Kan. 1982]).

A fiduciary relationship is created by contract when there is an express agreement placing a greater obligation on the party agreeing to act for the benefit of the other, such as a trust agreement. <u>Merrill Lynch, Pierce, Fenner & Smith v. Boeck</u>, 127 Wis.2d 127, 136, 377 N.W.2d 605, 609 (1985). A contract, standing alone, is insufficient to create a fiduciary duty. <u>See, e.g.</u>, <u>id.</u>; <u>Croft</u>, 423 N.W.2d at 546. Fiduciary relationships implied in

18

law arise when there exists a relationship of trust and confidence between the parties. Boeck, 377 N.W.2d at 609. However, trust and confidence alone do not give rise to a fiduciary relationship. Id. For example, "the mere fact of reliance on representations . . . does not necessarily create a relationship of trust and confidence leading to a fiduciary duty." Id. In addition to trust and confidence, fiduciary relationships are marked by "inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of facts involved, or other conditions giving to one an advantage over the other." Croft, 423 N.W.2d at 547.

Here, a fiduciary relationship was not created between the parties. The plaintiffs provide no argument and cite no authority supporting their contention that a fiduciary relationship was created when "McKay-Davis assumed control over the remains of Eric Jackson and agreed to return those remains to the plaintiffs for a proper burial and/or final resting place." (Plaintiffs' Brief in Opposition at 18). The plaintiffs contend that the parties had inherently unequal bargaining power based on unequal knowledge of the facts and Ms. Jackson's lack of relevant business intelligence. However, she provides no support for this contention. Moreover, this contention is contradicted by the Authorization signed by Mrs. Jackson, which allowed the her to elect how she was to receive her husband's cremains. This contract does not give the defendant an unfair advantage or relinquish Marlenea Jackson's control over decision-making related to the shipment of Eric Jackson's remains, key characteristics of fiduciary relationships. Croft, 423 N.W.2d at 547-48. In short, the facts do not establish anything beyond the relationship one customarily finds when a bereaved wife contracts a mortuary funeral home to carry out her deceased' husband's final disposition. See id.

The court's conclusion is supported by the great weight of authority. No court addressing the issue has held that funeral homes owe a fiduciary duty to their bereaved customers. For example, in <u>Gakin v. City of Rapid City</u>, the South Dakota Supreme Court held that no fiduciary relationship existed because the plaintiff "did not relinquish control over confidential decision making inherent in fiduciary relationships. 698 N.W.2d 493, 500 (S.D. 2005). Likewise, in In re <u>Tri-State Crematory Litigation,</u> the court held that "while it is true that persons seeking funeral services necessarily must trust and have confidence in the funeral homes they choose, '[t]he mere fact that one reposes great trust and confidence in another does not serve to create a confidential relationship.'" 215 F.R.D. 660, 683 (N.D. Ga. 2003) (citations omitted); <u>see</u> <u>also</u> <u>Evans v. Chambers Funeral Homes</u>, 2008 WL 2766173 at *3 (Ohio Ct. App. July 17, 2008) (holding that there is no fiduciary relationship between funeral homes and their customers in wrongful burial cases); <u>Kennedy v. Carriage Cemetery Services, Inc.</u>, 727 F.Supp. 2d 925, 931 (D. Nev. 2010) (holding that funeral services company did not owe its customers any fiduciary duty under Nevada law). <u>Compare</u> <u>Pacheco v. Rogers & Breece, Inc.</u>, 579 S.E.2d 505, 510 (N.C. App. 2003) (stating, without elaborating, that "a personal service contract for funeral arrangements might, in appropriate circumstances, give rise to a fiduciary duty," but finding that no such duty existed in the case before it); <u>Wilson v. Houston Funeral Home</u>, (holding that the defendant's failure to provide the family with an appropriate and dignified burial service was not a breach of a fiduciary duty, but rather a breach of the mortuary's special relationship with the family, a separate relationship recognized by California common law.)

Undoubtedly, Mrs. Jackson placed trust and confidence, in the ordinary sense of the term, in the defendant's ability to ensure the safe shipment of her husband's remains. However, trust and confidence alone do not give rise to a fiduciary duty. Boeck, 127 Wis. 2d at 136. If a fiduciary duty were created in all instances where one party to a contract placed trust and confidence in the other party to complete such contract as agreed, every breach of contract claim could give rise to a counterpart breach of fiduciary duty claim, a result not supported by the law.

For the foregoing reasons, the court determines that, as a matter of law, no fiduciary duty existed between the parties. Accordingly, the defendant's motion for summary judgment dismissing the plaintiffs' claim for breach of fiduciary duty will be granted.

The defendant also seeks summary judgment on the plaintiffs' claims for negligent handling of human remains and negligent infliction of emotional distress. Because the damages in each cause of action are for negligent infliction of emotional distress, there is a great deal of overlap between the parties' arguments and the court's analysis. Therefore, the court will address the claims together.

As to the negligent handling claim, the defendant contends that neither Wisconsin nor Oklahoma law recognize a cause of action for negligent handling of human remains. In support, the defendant cites to a number of Wisconsin and Oklahoma cases, which, according to the defendant, establish that claims arising from the mishandling of human remains must allege emotional distress accompanied by physical injury, or absent physical injury, allege willful or wanton mishandling. Because the plaintiffs allege negligent conduct, the defendant contends that the plaintiffs' emotional distress must be

accompanied by physical injury, or otherwise, their claims fail as a matter of law. In addition, the defendant asserts that the plaintiffs cannot establish the duty element of a negligence claim because it did not handle Eric Jackson's remains once the body left the funeral home. Therefore, the defendant maintains that any duty it owed to the plaintiffs ended when it paid Suhor to cremate and ship Eric Jackson's remains.

In response, the plaintiffs assert that its case for negligence is clear. All that it must prove is duty, breach, causation, and actual loss or damage. As to the duty element challenged by the defendants, the plaintiffs assert that under Wisconsin tort law, "every person has a duty to use ordinary care in all of his or her activities." (Plaintiffs' Brief in Opposition at 22 (citing Fortier v. Flambeau Plastics, Co., 164 Wis. 2d 639, 663, 476 N.W.2d 593 [Ct. App. 1991].)) Therefore, the plaintiffs claim that the defendant had a duty to exercise ordinary care when it agreed to ship the cremated remains to Marlenea Jackson's home in Wisconsin. The plaintiffs also challenge the defendant's interpretation of Wisconsin case law, stating that "Wisconsin law still recognizes a plaintiff's ability to recover for mental anguish when the sacred right to bury ones [sic] dead is disturbed." (Plaintiffs' Brief in Opposition at 25.) The plaintiffs further state that questions of negligence are generally reserved for the jury and that summary judgment should be granted in actions based on negligence only in rare cases.

Based on the plaintiffs' assertion that Wisconsin law allows a plaintiff to recover for mental anguish in cases arising from the negligent handling of human remains, the defendant asserts that there is no appreciable difference between the plaintiffs' claims for negligent handling of human remains and negligent infliction of emotional distress.

Accordingly, the defendant requests that the court dismiss the negligent handling of human remains claim as repetitive and redundant.

As previously noted, the Wisconsin Supreme Court first recognized the legal right to "entomb the remains of a relative in their integrity and without mutilation" in Koerber, 102 N.W. at 45. In Koerber, the court held that wrongful invasion of this right is an actionable wrong and that the law presumes damages, although they may be only nominal. Id. at 42-43. However, the court concluded that more than nominal damages were awardable where the injury was mental suffering because damages for injury to feelings were recoverable as an independent element of damages. Id. at 44.

When Koerber was decided in 1905, Wisconsin courts did not recognize an action for negligent infliction of emotional distress. Therefore, its holding was limited to cases alleging a willful and wanton invasion of the newly-recognized legal right to entomb the remains of a loved one without mutilation. Id. at 43. Later, Wisconsin recognized a cause of action for negligent infliction of emotional distress where mental distress was manifested by physical injury. Ver Hagen v. Gibbons, 47 Wis. 2d 220, 177 N.W.2d 83 (1970). Therefore, in Scarpaci, 292 N.W.2d at 816, the Wisconsin Supreme Court addressed whether a complaint alleging negligent interference with human remains stated a cognizable claim. The court found that it did state a claim because the complaint alleged that the plaintiff suffered great emotional distress manifested by physical injury. Id. at 822; see also Holsen v. Heritage Mut. Ins. Co., 165 Wis. 2d 641, 649, 478 N.W.2d 59, 63 (Ct. App. 1991).

These cases indicate that a claim for infliction of emotional distress arising from the negligent handling of human remains requires a showing of severe emotional distress

23

plus accompanying physical injury. However, Wisconsin law in the area of negligent infliction of emotional distress has changed significantly since these cases were decided. Most notably, the accompanying physical injury requirement has been eliminated. Bowen v. Lumbermens Mutual Insurance Co, 183 Wis. 2d 627, 653, 517 N.W.2d 434, 443 (Wis. 1994).

In Bowen, the Wisconsin Supreme Court laid out a framework for determining whether a claim for negligent infliction of emotional distress should go to trial. Id. at 432. The court began by analyzing all claims alleging negligent infliction of emotional distress. Regardless of the factual situation, the plaintiff must prove the following elements: (1) that the defendant's conduct was negligent (2) that the plaintiff suffered severe emotional distress, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury. Id. at 434.

The court cautioned that proof of these elements does not necessarily end the analysis because public policy considerations may also bar a case from proceeding to trial. Id. at 444. In Wisconsin, every person owes a duty of ordinary care to the world at large. Alvarado v. Sersch, 2003 WI 55, ¶ 13, 262 Wis.2d 74, 662 N.W.2d 350. Therefore, conduct is negligent if it involves foreseeable risk to anyone. Osborne v. Montgomery, 203 Wis. 223, 234 N.W. 373, 377 (1931). Because conduct is deemed negligent if it involves foreseeable risk of harm to anyone, the scope of a defendant's liability for a wrongful act is determined based on the doctrine of public policy, rather than the doctrine of duty. Bowen, 517 N.W.2d at 439. These public policy considerations are a facet of legal cause, which is determined by the court. Id. at 434. If the pleadings present a question of public policy, the court may decide the issue before trial at the

summary judgment stage of litigation.  Id. at 443.  Alternatively, if the issues are complex or the factual connections attenuated, the" court may defer its decision until the case has been fully tried.  Id.

In determining whether a defendant's liability should be limited based on public policy, the court in Bowen stated that courts should explore the following considerations:

> (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

Id. at 444.  These considerations serve to ensure that a claim for negligent infliction of emotional distress is authentic and does not place an unreasonable financial burden on the defendant.  Id. at 443.  "When it would shock the conscience of society to impose liability, the courts may hold as a matter of law that there is no liability.  Id.  (citing Pfeifer v. Standard Gateway Theater, 262 Wis. 229, 55 N.W.2d 29 [1952]).

 "The hallmark of negligent infliction of emotional distress is a contemporaneous or nearly contemporaneous sensory perception of a sudden, traumatic, injury-producing event."  Finnegan v. Skoglind, 263 Wis. 2d 574, 666 N.W.2d 797, 812 (2003).  Claims for negligent infliction of emotional distress arise in a myriad of factual circumstances.  Bowen, 517 N.W.2d at 434. For example, the court in Bowen specifically addressed "bystander" claims.   Bystander claims are those claims alleging "emotional distress arising from a tortfeasor's negligent infliction of physical harm on a third person."  Bowen, 517 N.W.2d at 434.

In <u>Bowen</u>, the plaintiff brought a bystander claim after suffering extreme emotional distress caused by her viewing the immediate aftermath of her son's fatal injury, which the defendant had caused.  In determining whether the plaintiff's claim should be barred as a matter of public policy, the court identified three prerequisite elements that a plaintiff must meet to ensure that the claim is genuine and that allowing recovery would not place an unreasonable burden upon the defendant:  (1) whether the victim was seriously injured or killed, (2) whether the plaintiff was a spouse, parent, child, grandparent, grandchild, sibling, of the victim, and (3) whether the plaintiff observed an extraordinary event.  <u>Id.</u> at 444-45.  In bystander claims, these three factors are considered first.  However, actions may still be barred as a matter of law by the six public policy considerations applicable to all negligence actions in Wisconsin.  <u>Finnegan</u>, 666 N.W.2d at 803.  Courts apply this test on a case-by-case basis.  <u>Bowen</u>, 517 N.W.2d at 446.

A plaintiff may also bring "direct" or "participant" claims in circumstances where the plaintiff is directly threatened by the defendant's negligent conduct, <u>Camp v. Anderson</u>, 2006 WI App 170, ¶ 21, 295 Wis. 2d 714, 721 N.W.2d 146, or where the plaintiff is directly involved in the tortuous activity.  <u>Pierce v. Physicians Ins. Co. or Wisconsin, Inc.</u>, 2005 WI 14, ¶ 15, 278 Wis. 2d 82, 692 N.W.2d 558 (allowing mother to bring claim for negligent infliction of emotional distress after doctor's tortuous conduct resulted in stillbirth because mother was a participant, not an observer).  In these cases, courts analyze only the six traditional public policy factors.

Because the Wisconsin Supreme Court has not revisited the tort of negligent handling of human remains since deciding <u>Bowen</u>, it is unclear whether courts should apply the new framework.  When <u>Koerber</u> was decided in 1905, Wisconsin did not

recognize claims for negligent infliction of emotional distress, so the court held that mishandling cases needed to show wanton and willful conduct. Seventy-five years later, when the court decided <u>Scarpaci</u>, Wisconsin courts recognized claims for negligent infliction emotional distress if the plaintiff could show that her mental suffering was manifested through physical injury. Therefore, Wisconsin courts required plaintiffs alleging negligent handling of human remains to prove both mental suffering and physical manifestation. <u>Bowen</u> has since eliminated the physical manifestation requirement.

Given that the negligent handling cases have developed in tandem with the tort of negligent infliction of emotional distress, this court concludes that the framework set forth in <u>Bowen</u> should apply. Thus, the plaintiffs must prove negligence, cause-in-fact, injury, and legal cause. The legal cause analysis performed will depend on whether the claim for negligent infliction of emotional distress is a direct or bystander claim. Either way, the plaintiffs need not show accompanying physical injury. <u>Bowen</u>, 517 N.W.2d at 443.

Here, the parties disagree over whether this case should be approached as a bystander or direct claim. The defendant contends that the plaintiffs' claim is a bystander claim, meaning that the plaintiffs must satisfy the three prerequisite elemental requirements set forth in <u>Bowen</u>. The defendant maintains that the plaintiffs cannot satisfy factors one and three. The defendant characterizes the claim as a bystander situation because the alleged negligent conduct was "fail[ure] to take care to ensure the delivery of the physical remains of the decedent. It was McKay-Davis's conduct with relation to another, not Marlenea Jackson, that apparently resulted in the infliction of emotional distress." (Reply Brief in Support of McKay-Davis' Motion for Summary Judgment [Defendant McKay-Davis Reply Brief] at 12.) The plaintiffs disagree with the

27

defendant's characterization of this case as a bystander claim. Instead, the plaintiff, asserts that the defendant's acts directly caused injury to them in the form of emotional harm.

Bystander cases arise when the tortfeasor's negligent conduct causes physical injury to a third person. The court has trouble characterizing the loss of Mr. Jackson's ashes as a severe injury to the deceased for he was incapable of suffering physical pain as a result of the loss. Consequently, the court will treat this case as a direct claim. This approach is supported by Regge v. Sunset Memory Gardens, 571 N.W.2d 925, 1997 WL 65320 (Wis. App. Oct. 23, 1997), an unpublished decision from the Wisconsin Court of Appeals. In Regge, the plaintiff sued the funeral home responsible for burying her grandmother for negligent infliction of emotional distress and negligent burial after it buried her grandmother in the wrong plot. The plaintiff did not witness the original negligent act, the burial. Although the court did not specify whether the plaintiff's claim was a bystander claim or a direct claim, the court treated the case as a direct claim by considering only the six public policy factors set forth in Bowen.

Treating this case as a direct claim is also supported by decisions issued in foreign jurisdictions. For example, in Boorman, 236 P.2d at 8 and Contreraz, 896 P.2d at 1122, the courts held that the plaintiff need not observe or perceive the tortfeasor's negligent act to state a claim for negligent handling of human remains. To hold otherwise would impose an arbitrary and unreasonable limitation. Contreraz, 896 P.2d at 1122. This court agrees that "[u]pholding such a rule would create an immunity that could protect mortuaries from their egregious conduct while barring recovery to those persons possibly suffering the greatest harm," id. at 1122, and that such immunity would likely be

widespread given that "the activities of a mortuary occur behind closed doors. Boorman, 236 P.2d at 8.

Since the court has determined that this case should be approached as a direct claim for negligent infliction of emotional distress, the court must undergo the first part of the Bowen framework, which requires a negligence analysis.

In Wisconsin, "[t]he test for negligence is whether the conduct foreseeably creates and unreasonable risk to others." Hoida v. M&I Midstate Bank, 2006 WI 69, ¶ 22, 291 Wis.2d 283, 717 N.W.2d 17 (citing Morgan v. Pa. Gen. Ins. Co., 87 Wis. 2d 723, 732, 275 N.W.2d 660 [1979]). An act or omission is negligent if the actor should reasonably have foreseen a resulting injury. However, in Wisconsin, it is not necessary that the actor foresee the particular injury or the particular person harmed. Pfeifer v. Standard Gateway Theater, Inc., 262 Wis. 229, 55 N.W.2d 29 (1952) (adopting the Judge William Andrews' approach to duty as set forth in his dissenting opinion in Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99 [Ct. App. 1928]).

To set forth an actionable claim of negligence, plaintiffs must establish four elements: (1) a duty of ordinary care owed by the defendant, (2) breach of that duty, (3) causation, and (4) actual loss or damage. In Hoida, the Wisconsin Supreme Court summarized the concept of duty as follows:

> [O]ne has a duty to exercise ordinary care under the circumstances. Gritzner, 235 Wis.2d 781, ¶ 20, 611 N.W.2d 906. If a person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances, and is therefore negligent. Rockweit, 197 Wis.2d at 424, 541 N.W.2d 742 (citation omitted). Ordinary care involves the concept of foreseeability, in that a reasonable person exercising ordinary care would have foreseen injury as a consequence of his act. Greiten, 70 Wis.2d at

602, 235 N.W.2d 677; <u>Osborne v. Montgomery</u>, 203 Wis. 223, 234, 234 N.W. 372 (1931).

These concepts, taken together, establish certain relationships. The existence of a duty of ordinary care encompasses what is reasonable according to facts and circumstances present in each individual case. Whether there has been a breach, the next element of a negligence claim, will depend in part upon what is reasonable to require a person to do, or to refrain from doing, under the circumstances. <u>Hatleberg</u>, 283 Wis.2d 234, ¶¶ 18-20, 700 N.W.2d 15.

Therefore, what is within the duty of ordinary care depends on the circumstances under which the claimed duty arises.

<u>Hoida</u>, 2006 WI 29, ¶ 27. Courts may decide whether a party had a duty to act as a matter of law. <u>Hocking v. City of Dodgeville</u>, 2009 WI 70, ¶¶ 10-13, 318 Wis.2d 681, 768 N.W.2d 552. In the business context, courts look to the parties' contractual obligations and limitations to help define the duty of ordinary care owed because the contract helps to identify what would be reasonable for the defendant to foresee under the circumstances. <u>Id.</u> ¶¶ 37-38.

In this case, the defendant agreed to perform certain funeral services on behalf of the plaintiff, Mrs. Jackson, including shipment of her husband's cremains to the plaintiffs in Wisconsin. The Statement of Funeral Goods and Services Selected form signed by the parties does not limit the defendant's obligation to ensure such shipment in any way. The Authorization for Cremation form signed by Marlenea Jackson while at McKay-Davis stated: "I request that following cremation, the FUNERAL HOME make disposition of the cremated remains as follows:" Mrs. Jackson wrote in the provided space: "ship to my home after cremation." The Authorization does not indicate that Suhor, as opposed to McKay-Davis as stated in the document, would ship the cremated remains. In addition, the purpose of requiring a signature upon delivery is to avoid losses. It was foreseeable that failure to require a signature would result in a loss. Whether it was foreseeable that

such loss would result in severe emotional distress is not relevant since the particular injury itself need not be foreseeable so long as some injury is foreseeable under the circumstances. Schilling v. Stockel, 26 Wis.2d 525, 543, 133 N.W.2d 335, 345 (1965). Thus, the defendant owed a duty of ordinary care to undertake its shipping obligation, unless, as the defendant contends, that duty ceased when the defendant paid Suhor to handle the cremation and ship Eric Jackson's cremains.

Whether the defendant's duty ceased appears to turn on agency law, which the parties did not brief or address in their proposed findings of fact. Moreover, the Authorization for Cremation does not provide much guidance. The form bears Wilbert Vault's logo and contact information, but was signed by Mrs. Jackson at McKay-Davis. The form is not signed by a representative from McKay-Davis, Suhor, or Wilbert Vaults. However, it was witnessed by an employee of McKay-Davis. As such, the court does not have sufficient facts to render a decision on whether or not the duty owed by the defendant to Mrs. Jackson ceased.

The Wisconsin Supreme Court made clear in Hoida that "[t]he analysis of the four elements necessary to state a claim for actionable negligence is the first consideration for a court when deciding motions for summary judgment." 2006 WI 29, ¶ 25. Once liability has been determined, the court may limit liability based on public policy. Alvarado, 2003 WI 55, ¶ 17. Although the court may preclude liability based on public policy before trial of the liability issue "where the facts are simple to ascertain and the public policy questions have been fully presented," the better practice is to submit the case to the jury first. Id. ¶ 18. Here, the facts are far from simple to ascertain. The parties' proposed findings of fact are at times confusing and incomplete. The parties' briefs do not focus on

the public policy factors. Moreover, proper analysis of the public policy factors relies in part on whether Suhor was acting as the defendant's agent. For these reasons, the court is unable to address legal causation at this time and will defer such determination until resolution of the liability issue at trial.

Because the defendant has not met its burden of proof, the court will deny its motion for summary judgment with respect to the plaintiffs' negligent handling of human remains claim and negligent infliction of emotional distress claim.

Finally, the defendant asserts that the plaintiffs' request for punitive damages lacks merit because nothing in the record indicates that the defendant acted with an intentional disregard for the rights of the claimant. Although a question of law, whether there is evidence to support an award of punitive damages is a question appropriately addressed after trial, before submitting the question of damages to the jury. Roehl Transport, Inc. v. Liberty Mut. Ins. Co., 2010 WI 49, ¶ 186, 352 Wis. 2d 56, 784 N.W.2d 542 (citing Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 268, 580 N.W.2d 233 [1998]). Therefore, the defendant's motion for summary judgment with regard to the plaintiffs' request for punitive damages will be denied as not ripe for review at this time.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **denied in part and granted in part**. (Docket #185).

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment seeking dismissal of Erica Jackson as plaintiff be and hereby is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment seeking dismissal of the plaintiffs' claim for breach of fiduciary duty be and hereby is **granted**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment seeking dismissal of the plaintiffs' claim for negligent handling of human remains be and hereby is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment seeking dismissal of the plaintiffs' claim for negligent infliction of emotional distress be and hereby is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment seeking dismissal of the plaintiffs' request for punitive damages be and hereby is **denied**.

Dated at Milwaukee, Wisconsin this 23rd day of November, 2011.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge