# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARLENEA JACKSON and**
**ERICA JACKSON (a minor),**

          Plaintiffs,

       -vs-                                                Case No. 07-C-1037

**MCKAY-DAVIS FUNERAL HOME,**
**TRAVELERS INSURANCE COMPANY, et al.,**

          Defendants.

## DECISION AND ORDER

      This lawsuit relates to the negligent mishandling and eventual loss of the cremains of Eric Gerald Jackson. It was filed in 2007 and assigned to Magistrate Judge Patricia Gorence. All of the parties in the initial complaint – Marlenea and Erica Jackson (husband and daughter), McKay-Davis Funeral Home, Suhor Industries, Oklahoma Wilbert Vaults, and DHL Air Express – agreed to proceed before Judge Gorence by filing this district's standard "Consent to Proceed Before a U.S. Magistrate Judge" form. *See* http://www.wied.uscourts.gov, Form Repository. On May 29, 2008, the plaintiffs filed an amended complaint naming additional defendants, including Travelers Insurance Company. The case then proceeded to the point where the only remaining defendants were Travelers and McKay-Davis (Travelers' insured). On August 21, 2012, Judge Gorence's office informed Travelers that it needed to file the magistrate consent/refusal form. Travelers filed its form the next day, indicating that it was "unwilling to consent" to proceed before a magistrate judge. The case was then reassigned due to the non-consent of the parties. The plaintiffs move for relief from this order, asking the

Court to send the case back to Judge Gorence.

Plaintiffs move for relief under either Rule 59(e) or Rule 60(b), but these rules generally govern postjudgment motions. *Tillman v. Burge*, 813 F. Supp. 2d 946, 982 (N.D. Ill. 2011). Nonetheless, district judges have inherent authority to reconsider an interlocutory order[1] because such orders are subject to revision at any time before the entry of judgment adjudicating all the claims. Fed. R. Civ. P. 54(b); *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 n.5 (7th Cir. 2007); *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993) (district courts have "practically unbridled discretion . . . to reconsider a previous interlocutory order"). The standards which govern post-judgment motions to reconsider are generally the same for interlocutory orders. *Tillman*, 813 F. Supp. 2d at 982-83. Reconsideration is appropriate to correct manifest errors of law or or fact or to present newly discovered evidence. *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

The Federal Magistrate Act provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Congress gave magistrate judges case-dispositive civil authority because it wanted to relieve the district courts' "mounting queue of civil cases" and "improve access to the courts for all groups." *Roell v. Withrow*, 538 U.S. 580, 588 (2003). But Congress also "meant to preserve a litigant's right to insist on trial before

---

[1] By analogy to an order granting a motion to transfer venue, Judge Gorence's order reassigning this case is an interlocutory order. 15 Wright & Miller, Fed. Practice & Proc. § 3855 (3d ed. 2007).

an Article III district judge insulated from interference with his obligation to ignore everything but the merits of a case." *Id.* Thus, voluntary consent is required before a civil action may be referred to a magistrate for a final decision. *Id.* at 589 ("concern about the possibility of coercive referrals . . . prompted Congress to make it clear that 'the voluntary consent of the parties is required before a civil action may be referred to a magistrate for a final decision'"). The issue of consent is addressed by statute, the Federal Rules of Civil Procedure, and the local rules of this judicial district. § 636(c)(2); Fed. R. Civ. P. 73; General L.R. 73 (E.D. Wis.) ("The magistrate judges in this District are designated to exercise the jurisdiction and authority provided by [] § 636(c), when all parties consent to it, and may conduct any or all proceedings, including a jury or nonjury trial, in a civil case").

Consent is typically resolved by filing this district's standard consent/refusal form. As noted above, Travelers only recently filed this form, and up until that point, Travelers was never reminded or given official notice that the form needed to be filed. Of course, up until that point, Travelers voluntarily participated in extensive proceedings before Judge Gorence. In *Roell*, the Supreme Court held that "although the specific referral procedures in [] § 636(c)(2) and Federal Rule of Civil Procedure 73(b) are by no means just advisory, the text and structure of the section as a whole suggest that a defect in the referral to a full-time magistrate judge under § 636(c)(2) does not eliminate that magistrate judge's 'civil jurisdiction' under § 636(c)(1) so long as the parties have in fact voluntarily consented." 538 U.S. at 587. Accordingly, courts may "accept implied consent" where "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Id.* at 590.

There can be little doubt that Travelers voluntarily appeared before Judge Gorence. Travelers answered the amended complaint, filed a counterclaim against the plaintiffs, and filed a crossclaim against the other defendants. Travelers also appeared at scheduling conferences and filed several motions: to bifurcate, stay, reconsider, quash, for a protective order, for declaratory judgment, and for partial summary judgment. "After *Roell*, litigants who have knowingly proceeded without objection through lengthy discovery and summary judgment proceedings with one or more magistrate judges are deemed to have impliedly consented to section 636(c) jurisdiction." *Stevo v. Frasor*, 662 F.3d 880, 884 (7th Cir. 2011). Further, there is a plausible argument that Travelers was "made aware of the need for consent" on multiple occasions because, as in *Roell*, Travelers "stood silent" on at least two occasions when Judge Gorence "stated that they had consented to her authority." *Id.* at 584 n.1.

Nonetheless, the Court must conclude that *Roell* is distinguishable because the issue of consent in *Roell* was raised post-judgment. "Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of *waiting for the outcome* before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored." *Id.* at 590 (emphasis added). Thus, the Supreme Court was primarily concerned with "the risk of a full and complicated trial wasted at the option of an undeserving and possibly opportunistic litigant." *Id.* Here, Travelers raised the issue after extensive proceedings, but only after being prompted to file the form and before the entry of judgment. Therefore, Travelers cannot be accused of "sit[ting] back without a word about their failure to file the form, with a right to vacate any judgment that turned out not to their liking." *Id.*

To be sure, there are strong justifications for allowing this case to proceed before Judge Gorence, who ably presided for almost five years until the eve of trial. On the other hand, there is a sense of uncertainty over whether Travelers was adequately informed that an Article III judge was available to hear this case, at least until the point where Travelers was prompted to file the form. This uncertainty, which was clarified when Travelers filed its refusal, would cast a pall over future proceedings, undermining or at least calling into question Judge Gorence's jurisdiction to enter judgment in this case. There is no need to subject this case to the risk of a void final judgment. These are extraordinary circumstances which justify vacating the reference to Judge Gorence. 28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b)(3).

Also before the Court is the plaintiffs' motion for Rule 11 sanctions against McKay-Davis for filing what it terms a "frivolous motion seeking reconsideration of the Court's ruling on Summary Judgment." Pursuant to Rule 11's safe harbor provision, Fed. R. Civ. P. 11(c)(2), plaintiffs served McKay-Davis with a copy of their motion on January 3, 2012, but did not file it until August 20, five days after Judge Gorence denied McKay Davis's motion to reconsider. The Rule 11 motion is untimely because a motion for sanctions should be filed "as soon as practicable after discovery of a Rule 11 violation." *Sullivan v. Hunt*, 350 F.3d 664, 666 (7th Cir. 2003). That the plaintiffs waited eight months to file it and then only after an adverse ruling strongly suggests that the motion was not sanctionable in the first instance. "If a party's action is 'abusive' as contemplated by Rule 11, the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of an underlying question of law. If there is doubt how the district court will rule on the challenged pleading or motion, the filing of the

paper is unlikely to have violated Rule 11. . . . [M]ere failure to prevail does not trigger a Rule 11 sanction order." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988).

Setting aside the issue of timeliness, McKay-Davis's motion to reconsider did not run afoul of Rule 11 in any respect. Plaintiffs argue that the motion was frivolous because it did not meet the standard which justifies reconsideration – manifest error of law or fact. That is why Judge Gorence denied the motion, but the arguments presented therein were not frivolous. Fed. R. Civ. P. 11(b)(2). In fact, the motion to reconsider was filed in tandem with a *Daubert* motion to exclude the testimony of Dr. Lamers (which Judge Gorence granted), and the two motions were related in some respect. ECF No. 212, Brief in Support of Motion to Reconsider at 6 ("based on recent case law and the accompanying Motion to Exclude Dr. Lamers' testimony and opinions, the two negligence claims should be re-analyzed"). Plaintiffs also accuse McKay-Davis of "non-stop and evasive motion practice from the inception of this case, delaying final resolution for years." *See* Fed. R. Civ. P. 11(b)(1) (pleading must not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). The history of this case is extensive, but it is disingenuous for the plaintiffs to blame this on McKay-Davis. McKay-Davis did not engage in any substantive motion practice until it moved for summary judgment in January of 2011. Prior to that, Judge Gorence was preoccupied with resolving DHL's liability and the insurance coverage/duty to defend issues related to Travelers.

If anything, the Court agrees with McKay-Davis that the motion for sanctions is sanctionable in and of itself. The argument that McKay-Davis somehow violated Rule 11 by offering reasonable arguments in relation to Judge Gorence's ruling on summary judgment is

simply frivolous, Rule 11(b)(2), and the fact that the plaintiffs waited until after Judge Gorence issued her ruling suggests that it was brought for an improper purpose. Rule 11(b)(1). McKay-Davis is entitled to an award of the costs and attorneys' fees that it incurred in response to this motion. *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) ("in cases where the initial movant's Rule 11 motion is denied, a court may issue sanctions against the movant because 'the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.' The nonmoving party need not file a cross-motion to receive fees as the court can award reasonable expenses to the prevailing party, including attorney's fees, incurred in presenting or opposing the motion") (internal citations omitted); Fed. R. Civ. P. 11(c)(2).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' motion to assign this matter back to Judge Gorence [ECF No. 233] is **DENIED**;

2. Plaintiffs' motion for Rule 11 sanctions [ECF No. 229] is **DENIED**. McKay-Davis is entitled to its reasonable expenses and attorney's fees incurred in opposing this motion; and

3. On **December 4, 2012** at **9:30 a.m. (CST)**, Court will conduct a telephonic status conference to discuss further scheduling in this case. The Court will initiate the call.

Dated at Milwaukee, Wisconsin, this 6th day of November, 2012.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 7 -